(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MINNECI ET AL. *v.* POLLARD ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1104.   Argued November 1, 2011—Decided January 10, 2012

Respondent Pollard sought damages from employees at a privately run federal prison in California, claiming that they had deprived him of adequate medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The Federal District Court dismissed the complaint, ruling that the Eighth Amendment does not imply an action under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388, against a privately managed prison's personnel. The Ninth Circuit reversed.

*Held:* Because in the circumstance of this case, state tort law authorizes adequate alternative damages actions—providing both significant deterrence and compensation—no *Bivens* remedy can be implied here. Pp. 3−12.

(a) *Wilkie* v. *Robbins,* 551 U. S. 537, fairly summarizes the basic considerations the Court applies here. In deciding whether to recognize a *Bivens* remedy, a court must first ask "whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding" damages remedy. Even absent an alternative, "a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Id.,* at 550. In *Bivens* itself, the Court held that the Fourth Amendment implicitly authorized a court to order federal agents to pay damages to a person injured by the agents' violation of the Amendment's strictures, 403 U. S., at 389, noting that the Fourth Amendment prohibited conduct that state law might permit, *id.,* at 392–393, and that the interests protected on the one

hand by state "trespass" and "invasion of privacy" laws and on the other hand by the Fourth Amendment "may be inconsistent or even hostile," *id.*, at 394. It also stated that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty," *id.*, at 395, and found "no special factors counselling hesitation in the absence of affirmative action by Congress." *Id.*, at 396. *Bivens* actions were allowed in *Davis* v. *Passman*, 442 U. S. 228, for a Fifth Amendment due process claim involving gender-based employment discrimination, and in *Carlson* v. *Green*, 446 U. S. 14, for an Eighth Amendment claim based on federal government officials' "deliberat[e] indifferen[ce]" to a federal prisoner's medical needs, *id.*, at 16, n. 1, 17. Since *Carlson,* this Court has declined to imply a *Bivens* action in several different instances. See*, e.g., Bush* v. *Lucas,* 462 U. S. 367, *Correctional Services Corp.* v. *Malesko,* 534 U. S. 61.

Applying *Wilkie*'s approach here, Pollard cannot assert a *Bivens* claim, primarily because his Eighth Amendment claim focuses on a kind of conduct that typically falls within the scope of traditional state tort law. And in the case of a privately employed defendant, state tort law provides an "alternative, existing process" capable of protecting the constitutional interests at stake. *Wilkie*, 551 U. S., at 550. The existence of that alternative remedy constitutes a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding" damages remedy. *Ibid.* Pp. 3−7.

(b) Pollard's contrary arguments are rejected. First, he claims that *Carlson* authorizes an Eighth Amendment-based *Bivens* action here, but *Carlson* involved government, not privately employed, personnel. The potential existence of an "adequate alternative, existing process" differs dramatically for public and private employees, as prisoners ordinarily can bring state tort actions against private employees, but not against public ones. Second, Pollard's argument that this Court should consider only whether federal laws provide adequate alternative remedies because of the "vagaries" of state tort law, *Carlson, supra,* at 23, was rejected in *Malesko, supra,* at 72−73. Third, Pollard claims that state tort law does not provide remedies adequate to protect the constitutional interests at issue here, but California, like every other State (as far as the Court is aware), has tort law that provides for negligence actions for claims such as his. That the state law may prove less generous than would a *Bivens* action does not render the state law inadequate, and state remedies and a potential *Bivens* remedy need not be perfectly congruent. Fourth, Pollard argues that there may be similar Eighth Amendment claims that state tort law does not cover, but he offers no supporting cases. The possibility of a future case, where an Eighth Amendment claim or state

Syllabus

law differs significantly from those at issue, provides insufficient grounds for reaching a different conclusion here. Pp. 7–12.

607 F. 3d 583 and 629 F. 3d 843, reversed.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed a concurring opinion, in which THOMAS, J., joined. GINSBURG, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–1104

MARGARET MINNECI, ET AL., PETITIONERS *v.*
RICHARD LEE POLLARD ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 10, 2012]

JUSTICE BREYER delivered the opinion of the Court.

The question is whether we can imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison. See generally *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388, 389 (1971) ("[V]iolation of [the Fourth Amendment] by a federal agent . . . gives rise to a cause of action for damages" against a Federal Government employee). Because we believe that in the circumstances present here state tort law authorizes adequate alternative damages actions—actions that provide both significant deterrence and compensation—we cannot do so. See *Wilkie* v. *Robbins*, 551 U. S. 537, 550 (2007) (no *Bivens* action where "alternative, existing" processes provide adequate protection).

I

Richard Lee Pollard was a prisoner at a federal facility operated by a private company, the Wackenhut Corrections Corporation. In 2002 he filed a *pro se* complaint in federal court against several Wackenhut employees, who (now) include a security officer, a food-services supervisor,

and several members of the medical staff. As the Federal
Magistrate Judge interpreted Pollard's complaint, he
claimed that these employees had deprived him of ade-
quate medical care, had thereby violated the Eighth
Amendment's prohibition against "cruel and unusual"
punishment, and had caused him injury. He sought
damages.

Pollard said that a year earlier he had slipped on a cart
left in the doorway of the prison's butcher shop. The
prison medical staff took x rays, thought he might have
fractured both elbows, brought him to an outside clinic for
further orthopedic evaluation, and subsequently arranged
for surgery. In particular, Pollard claimed:

(1) Despite his having told a prison guard that he could
not extend his arm, the guard forced him to put on a
jumpsuit (to travel to the outside clinic), causing him "the
most excruciating pain," App. 32;

(2) During several visits to the outside clinic, prison
guards made Pollard wear arm restraints that were con-
nected in a way that caused him continued pain;

(3) Prison medical (and other) personnel failed to follow
the outside clinic's instructions to put Pollard's left elbow
in a posterior splint, failed to provide necessary physical
therapy, and failed to conduct necessary studies, including
nerve conduction studies;

(4) At times when Pollard's arms were in casts or simi-
larly disabled, prison officials failed to make alternative
arrangements for him to receive meals, with the result
that (to avoid "being humiliated" in the general food ser-
vice area, *id.,* at 35) Pollard had to auction off personal
items to obtain funds to buy food at the commissary;

(5) Prison officials deprived him of basic hygienic care
to the point where he could not bathe for two weeks;

(6) Prison medical staff provided him with insufficient
medicine, to the point where he was in pain and could not
sleep; and

(7) Prison officials forced him to return to work before his injuries had healed.

After concluding that the Eighth Amendment did not provide for a *Bivens* action against a privately managed prison's personnel, the Magistrate Judge recommended that the District Court dismiss Pollard's complaint. The District Court did so. But on appeal the Ninth Circuit found that the Eighth Amendment provided Pollard with a *Bivens* action, and it reversed the District Court. *Pollard* v. *The GEO Group, Inc.*, 607 F. 3d 583, 603, as amended, 629 F. 3d 843, 868 (CA9 2010).

The defendants sought certiorari. And, in light of a split among the Courts of Appeals, we granted the petition. Compare *ibid.* (finding an Eighth Amendment *Bivens* action where prisoner sues employees of a privately operated federal prison), with, *e.g.*, *Alba* v. *Montford*, 517 F. 3d 1249, 1254–1256 (CA11 2008) (no *Bivens* action available), and *Holly* v. *Scott*, 434 F. 3d 287, 288 (CA4 2006) (same).

## II

Recently, in *Wilkie* v. *Robbins, supra*, we rejected a claim that the Fifth Amendment impliedly authorized a *Bivens* action that would permit landowners to obtain damages from government officials who unconstitutionally interfere with their exercise of property rights. After reviewing the Court's earlier *Bivens* cases, the Court stated:

> "[T]he decision whether to recognize a *Bivens* remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. . . . But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of

remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" 551 U. S., at 550 (quoting *Bush* v. *Lucas*, 462 U. S. 367, 378 (1983)).

These standards seek to reflect and to reconcile the Court's reasoning set forth in earlier cases. In *Bivens* itself the Court held that the Fourth Amendment implicitly authorized a court to order federal agents to pay damages to a person injured by the agents' violation of the Amendment's constitutional strictures. 403 U. S., at 389. The Court noted that "'where federally protected rights have been invaded,'"courts can "'adjust their remedies so as to grant the necessary relief.'" *Id.*, at 392 (quoting *Bell* v. *Hood*, 327 U. S. 678, 684 (1946)). See also *Correctional Services Corp.* v. *Malesko*, 534 U. S. 61, 66 (2001) ("authority to imply a new constitutional tort" anchored within general "'arising under'" jurisdiction). It pointed out that the Fourth Amendment prohibited, among other things, conduct that state law might permit (such as the conduct at issue in that very case). *Bivens*, 403 U. S., at 392–393. It added that the interests protected on the one hand by state "trespass" and "invasion of privacy" laws and on the other hand by the Fourth Amendment's guarantees "may be inconsistent or even hostile." *Id.*, at 394. It stated that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Id.*, at 395. And it found "no special factors counselling hesitation in the absence of affirmative action by Congress." *Id.*, at 396.

In *Davis* v. *Passman*, 442 U. S. 228 (1979), the Court considered a former congressional employee's claim for damages suffered as a result of her employer's unconstitutional discrimination based on gender. The Court found a

damages action implicit in the Fifth Amendment's Due Process Clause. *Id.*, at 248–249. In doing so, the Court emphasized the unavailability of "other alternative forms of judicial relief." *Id.*, at 245. And the Court noted that there was "no evidence" that Congress (or the Constitution) intended to foreclose such a remedy. *Id.*, at 247.

In *Carlson* v. *Green*, 446 U. S. 14 (1980), the Court considered a claim for damages brought by the estate of a federal prisoner who (the estate said) had died as the result of government officials' "deliberat[e] indifferen[ce]" to his medical needs—indifference that violated the Eighth Amendment. *Id.*, at 16, n. 1, 17 (citing *Estelle* v. *Gamble*, 429 U. S. 97 (1976)). The Court implied an action for damages from the Eighth Amendment. 446 U. S., at 17–18. It noted that state law offered the particular plaintiff no meaningful damages remedy. *Id.*, at 17, n. 4. Although the estate might have brought a damages claim under the Federal Tort Claims Act, the defendant in any such lawsuit was the employer, namely the United States, not the individual officers who had committed the violation. *Id.*, at 21. A damages remedy against an individual officer, the Court added, would prove a more effective deterrent. *Ibid.* And, rather than leave compensation to the "vagaries" of state tort law, a federal *Bivens* action would provide "uniform rules." 446 U. S., at 23.

Since *Carlson*, the Court has had to decide in several different instances whether to imply a *Bivens* action. And in each instance it has decided against the existence of such an action. These instances include:

(1) A federal employee's claim that his federal employer dismissed him in violation of the First Amendment, *Bush, supra*, at 386–388 (congressionally created federal civil service procedures provide meaningful redress);

(2) A claim by military personnel that military superiors violated various constitutional provisions, *Chappell* v. *Wallace*, 462 U. S. 296, 298–300 (1983) (special factors

related to the military counsel against implying a *Bivens* action), see also *United States* v. *Stanley*, 483 U. S. 669, 683–684 (1987) (similar);

(3) A claim by recipients of Social Security disability benefits that benefits had been denied in violation of the Fifth Amendment, *Schweiker* v. *Chilicky*, 487 U. S. 412, 414, 425 (1988) (elaborate administrative scheme provides meaningful alternative remedy);

(4) A former bank employee's suit against a federal banking agency, claiming that he lost his job due to agency action that violated the Fifth Amendment's Due Process Clause, *FDIC* v. *Meyer*, 510 U. S. 471, 484–486 (1994) (no *Bivens* actions against government agencies rather than particular individuals who act unconstitutionally);

(5) A prisoner's Eighth Amendment-based suit against a private corporation that managed a federal prison, *Malesko*, 534 U. S., at 70–73 (to permit suit against the employer-corporation would risk skewing relevant incentives; at the same time, the ability of a prisoner to bring state tort law damages action against *private* individual defendants means that the prisoner does not "lack effective remedies," *id.,* at 72).

Although the Court, in reaching its decisions, has not always similarly emphasized the same aspects of the cases, *Wilkie* fairly summarizes the basic considerations that underlie those decisions. 551 U. S., at 550. We consequently apply its approach here. And we conclude that Pollard cannot assert a *Bivens* claim.

That is primarily because Pollard's Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law. And in the case of a privately employed defendant, state tort law provides an "alternative, existing process" capable of protecting the constitutional interests at stake. 551 U. S., at 550. The existence of that alternative here constitutes a "convincing reason for the Judicial Branch to refrain

from providing a new and freestanding remedy in damages." *Ibid.* Our reasoning is best understood if we set forth and explain why we reject Pollard's arguments to the contrary.

## III

Pollard (together with supporting *amici*) asks us to imply a *Bivens* action for four basic reasons—none of which we find convincing. First, Pollard argues that this Court has already decided in *Carlson* that a federal prisoner may bring an Eighth Amendment-based *Bivens* action against prison personnel; and we need do no more than simply apply *Carlson*'s holding here. *Carlson,* however, was a case in which a federal prisoner sought damages from personnel employed by the *government*, not personnel employed by a *private* firm. 446 U. S., at 25. And for present purposes that fact—of employment status—makes a critical difference.

For one thing, the potential existence of an adequate "alternative, existing process" differs dramatically in the two sets of cases. Prisoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government. See 28 U. S. C. §§2671, 2679(b)(1) (Westfall Act) (substituting United States as defendant in tort action against federal employee); *Osborn* v. *Haley*, 549 U. S. 225, 238, 241 (2007) (Westfall Act immunizes federal employee through removal and substitution of United States as defendant). But prisoners ordinarily *can* bring state-law tort actions against employees of a private firm. *Infra,* at 9–10.

For another thing, the Court specifically rejected Justice Stevens' somewhat similar suggestion in his dissenting opinion in *Malesko*, namely that a prisoner's suit against a private prison-management firm should fall within *Carlson*'s earlier holding because such a firm, like a federal employee, is a "federal agent." Compare *Malesko,* 534

U. S., at 70, and n. 4 (majority opinion), with *id.*, at 76–77, 82 (dissenting opinion). In rejecting the dissent's suggestion, the Court explained that the context in *Malesko* was "fundamentally different" from the contexts at issue in earlier cases, including *Carlson.* 534 U. S., at 70. That difference, the Court said, reflected in part the nature of the defendant, *i.e.*, a corporate employer rather than an individual employee, *ibid.*, and in part reflected the existence of alternative "effective" state tort remedies, *id.*, at 72–73. This last-mentioned factor makes it difficult to square Pollard's argument with *Malesko*'s reasoning.

Second, Pollard argues that, because of the "vagaries" of state tort law, *Carlson,* 446 U. S., at 23, we should consider only whether *federal* law provides adequate alternative remedies. See *id.*, at 18–19, 23 (considering adequacy of federal remedies); see also, *e.g., Schweiker*, *supra,* at 423 (similar); *Bush,* 462 U. S., at 378 (similar). But cf. *Carlson*, *supra*, at 24 ("'[R]elevant Indiana statute would not permit survival of the [state tort] claim'"). This argument flounders, however, on the fact that the Court rejected it in *Malesko*. Compare 534 U. S., at 72–73 (majority opinion), with *id.*, at 79–80 (Stevens, J., dissenting) (making similar suggestion). State tort law, after all, can help to deter constitutional violations as well as to provide compensation to a violation's victim. And it is consequently unsurprising that several cases have considered the adequacy or inadequacy of state-law remedies when determining whether to imply a *Bivens* remedy. See, *e.g.*, *Bivens*, 403 U. S., at 394 (state tort law "inconsistent or even hostile" to Fourth Amendment); *Davis*, 442 U. S., at 245, n. 23 (noting no state-law remedy available); cf. *Malesko*, *supra,* at 70 (noting that the Court has implied *Bivens* action only where any alternative remedy against individual officers was "nonexistent" or where plaintiff "lacked *any alternative remedy*" at all).

Third, Pollard argues that state tort law does not pro-

vide remedies *adequate* to protect the constitutional inter-
ests at issue here. Pollard's claim, however, is a claim for
physical or related emotional harm suffered as a result of
aggravated instances of the kind of conduct that state
tort law typically forbids. That claim arose in California,
where state tort law provides for ordinary negligence
actions, for actions based upon "want of ordinary care or
skill," for actions for "negligent failure to diagnose or
treat," and for actions based upon the failure of one with a
custodial duty to care for another to protect that other
from "'unreasonable risk of physical harm.'" See Cal. Civ.
Code Ann. §§1714(a), 1714.8(a) (West 2009 and Supp.
2012); *Giraldo* v. *California Dept. of Corrections and Re-
habilitation*, 168 Cal. App. 4th 231, 248, 85 Cal. Rptr. 3d
371, 384 (2008) (quoting *Haworth* v. *State*, 60 Haw. 557,
562, 592 P. 2d 820, 824 (1979)). California courts have
specifically applied this law to jailers, including private
operators of prisons. *Giraldo*, *supra,* at 252, 85 Cal. Rptr.
3d, at 387 ("[J]ailers owe prisoners a duty of care to pro-
tect them from foreseeable harm"); see also *Lawson* v.
*Superior Ct.*, 180 Cal. App. 4th 1372, 1389–1390, 1397,
103 Cal. Rptr. 3d 834, 849–850, 855 (2010) (same).

Moreover, California's tort law basically reflects general
principles of tort law present, as far as we can tell, in the
law of every State. See Restatement (Second) of Torts
§§314A(4), 320 (1963–1964). We have found specific au-
thority indicating that state law imposes general tort
duties of reasonable care (including medical care) on pris-
on employees in every one of the eight States where pri-
vately managed secure federal facilities are currently lo-
cated. See Dept. of Justice, Federal Bureau of Prisions,
Weekly Population Report (Dec 22, 2011), http://
www.bop.gov/locations/weekly_report.jsp (listing States)
(as visited Dec. 29, 2011, and available in Clerk of Court's
case file); *Thomas* v. *Williams*, 105 Ga. App. 321, 326, 124
S. E. 2d 409, 412–413 (1962) (In Georgia, "'sheriff owes to

a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him'"); *Giraldo, supra,* at 248, 85 Cal. Rptr. 3d, at 384 (California, same); *Farmer* v. *State ex rel. Russell,* 224 Miss. 96, 105, 79 So. 2d 528, 531 (1955) (Mississippi, same); *Doe* v. *Albuquerque,* 96 N. M. 433, 438, 631 P. 2d 728, 733 (App. 1981) (New Mexico, same); *Multiple Claimants* v. *North Carolina Dept. of Health and Human Servs.,* 176 N. C. App. 278, 280, 626 S. E. 2d 666, 668 (2006) (North Carolina, same); *Clemets* v. *Heston,* 20 Ohio App. 3d 132, 135–136, 485 N. E. 2d 287, 291 (1985) (Ohio, same); *Williams* v. *Syed,* 782 A. 2d 1090, 1093–1094 (Pa. Commw. 2001) (Pennsylvania, same); *Salazar* v. *Collins,* 255 S. W. 3d 191, 198–200 (Tex. App. 2008) (Texas, same); see also Schellenger, 14 A. L. R. 2d 353, §2[a] (Later Case Service and Supp. 2011) (same). But cf. Miss. Code. Ann. §11–46–9(1)(m) (Supp. 2011) (statute forbidding such actions against *State*—though not private—employees); N. Y. Correc. Law Ann. §§24 (West 2003), 121 (2011 Cum. Supp.) (similar).

We note, as Pollard points out, that state tort law may sometimes prove less generous than would a *Bivens* action, say, by capping damages, see Cal. Civ. Code Ann. §3333.2(b) (West 1997), or by forbidding recovery for emotional suffering unconnected with physical harm, see 629 F. 3d, at 864, or by imposing procedural obstacles, say, initially requiring the use of expert administrative panels in medical malpractice cases, see, *e.g.,* Me. Rev. Stat. Ann., Tit. 24, §2853, (Supp. 2010); Mass. Gen. Laws, ch. 231, §60B (West 2010). But we cannot find in this fact sufficient basis to determine state law inadequate.

State-law remedies and a potential *Bivens* remedy need not be perfectly congruent. See *Bush, supra,* at 388 (administrative remedies adequate even though they "do not provide complete relief"). Indeed, federal law as well as

state law contains limitations. Prisoners bringing federal lawsuits, for example, ordinarily may not seek damages for mental or emotional injury unconnected with physical injury. See 42 U. S. C. §1997e(e). And *Bivens* actions, even if more generous to plaintiffs in some respects, may be less generous in others. For example, to show an Eighth Amendment violation a prisoner must typically show that a defendant acted, not just negligently, but with "deliberate indifference." *Farmer* v. *Brennan*, 511 U. S. 825, 834 (1994). And a *Bivens* plaintiff, unlike a state tort law plaintiff, normally could not apply principles of *respondeat superior* and thereby obtain recovery from a defendant's potentially deep-pocketed employer. See *Ashcroft* v. *Iqbal*, 556 U. S. 662, 676 (2009).

Rather, in principle, the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations. The features of the two kinds of actions just mentioned suggest that, in practice, the answer to this question is "yes." And we have found nothing here to convince us to the contrary.

Fourth, Pollard argues that there "may" be similar kinds of Eighth Amendment claims that state tort law does not cover. But Pollard does not convincingly show that there are such cases. Compare Brief for Respondent Pollard 32 (questioning the availability of state tort remedies for "prisoners [who] suffer attacks by other inmates, preventable suicides, or the denial of heat, ventilation or movement"), with *Giraldo, supra,* at 248–249, 85 Cal Rptr. 3d, at 384–385 (courts have long held that prison officials must protect, *e.g.*, transgender inmate from foreseeable harm by other inmates), and Restatement (Second) of Torts §§314A(4), 320.

Regardless, we concede that we cannot prove a negative or be totally certain that the features of state tort law

relevant here will universally prove to be, or remain, as we have described them. Nonetheless, we are certain enough about the shape of present law as applied to the kind of case before us to leave different cases and different state laws to another day. That is to say, we can decide whether to imply a *Bivens* action in a case where an Eighth Amendment claim or state law differs significantly from those at issue here when and if such a case arises. The possibility of such a different future case does not provide sufficient grounds for reaching a different conclusion here.

For these reasons, where, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case.

The judgment of the Ninth Circuit is reversed.

*So ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–1104

_____

## MARGARET MINNECI, ET AL., PETITIONERS *v.* RICHARD LEE POLLARD ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 10, 2012]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring.

I join the opinion of the Court because I agree that a narrow interpretation of the rationale of *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971), would not cause the holding of that case to apply to the circumstances of this case. Even if the narrowest rationale of *Bivens* did apply here, however, I would decline to extend its holding. *Bivens* is "a relic of the heady days in which this Court assumed common-law powers to create causes of action" by constitutional implication. *Correctional Services Corp.* v. *Malesko*, 534 U. S. 61, 75 (2001) (SCALIA, J., concurring); see also *Wilkie* v. *Robbins*, 551 U. S. 537, 568 (2007) (THOMAS, J., concurring). We have abandoned that power in the statutory field, see *Alexander* v. *Sandoval*, 532 U. S. 275, 287 (2001), and we should do the same in the constitutional field, where (presumably) an imagined "implication" cannot even be repudiated by Congress. As I have previously stated, see *Malesko, supra,* at 75, I would limit *Bivens* and its two follow-on cases (*Davis* v. *Passman*, 442 U. S. 228 (1979), and *Carlson* v. *Green*, 446 U. S. 14 (1980)) to the precise circumstances that they involved.

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–1104

_____

## MARGARET MINNECI, ET AL., PETITIONERS *v.* RICHARD LEE POLLARD ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 10, 2012]

JUSTICE GINSBURG, dissenting.

Were Pollard incarcerated in a federal- or state-operated facility, he would have a federal remedy for the Eighth Amendment violations he alleges. See *Carlson* v. *Green*, 446 U. S. 14 (1980) (*Bivens* action); *Estelle* v. *Gamble*, 429 U. S. 97 (1976) (42 U. S. C. §1983 action). For the reasons stated in the dissenting opinion I joined in *Correctional Services Corp.* v. *Malesko*, 534 U. S. 61, 75–83 (2001) (opinion of Stevens, J.), I would not deny the same character of relief to Pollard, a prisoner placed by federal contract in a privately operated prison. Pollard may have suffered "aggravated instances" of conduct state tort law forbids, *ante*, at 9 (opinion of the Court), but that same aggravated conduct, when it is engaged in by official actors,\* also offends the Federal Constitution, see *Estelle*, 429 U. S., at 105–106. Rather than remitting Pollard to the "vagaries" of state tort law, *Carlson*, 446 U. S., at 23, I would hold his injuries, sustained while serving a federal sentence, "compensable according to uniform rules of federal law," *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388, 409 (1971) (Harlan, J., concurring

——————

　\*The Ninth Circuit ruled that petitioners acted under color of federal law, *Pollard* v. *The GEO Group, Inc.*, 629 F. 3d 843, 854 (2010), and petitioners did not seek this Court's review of that determination, see Brief for Petitioners 37, n. 8.

in judgment).

Indeed, there is stronger cause for providing a federal remedy in this case than there was in *Malesko*. There, the question presented was whether a *Bivens* action lies against a private corporation that manages a facility housing federal prisoners. *Malesko*, 534 U. S., at 63. Suing a corporate employer, the majority observed in *Malesko*, would not serve to deter individual officers from conduct transgressing constitutional limitations on their authority. *Id.*, at 70–71. Individual deterrence, the Court reminded, was the consideration central to the *Bivens* decision. *Malesko*, 534 U. S., at 70. Noting the availability of state tort remedies, the majority in *Malesko* declined to "exten[d] *Bivens* beyond [that decision's] core premise," *i.e.*, deterring individual officers. *Malesko*, 534 U. S., at 71–73. Pollard's case, in contrast, involves *Bivens*' core concern: His suit seeking damages directly from individual officers would have precisely the deterrent effect the Court found absent in *Malesko*.

For the reasons stated, I would hold that relief potentially available under state tort law does not block Pollard's recourse to a federal remedy for the affront to the Constitution he suffered. Accordingly, I would affirm the Ninth Circuit's judgment.