# United States Court of Appeals
## For the First Circuit

No. 14-1320

GARETH FRANCIS,

Petitioner, Appellant,

v.

CHRISTOPHER MALONEY and CHARLES E. SAMUELS, JR.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Amy L. Codagnone for petitioner.
Christine J. Wichers, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
respondents.

August 19, 2015

**HOWARD**, **Chief Judge**.    Although the parties present this case as implicating a question of due process, it ultimately turns on our inability to provide the petitioner with the relief that he seeks.    Petitioner Gareth Francis brought this 28 U.S.C. § 2241 habeas corpus petition after he was released from federal custody. In the district court, he argued that the Bureau of Prisons ("BOP") violated his due process rights when it failed to provide him with an in-person hearing before revoking his good-time credits, thus causing him to over-serve his prison sentence.    The district court rejected his constitutional contention.    We instead conclude that we are unable to provide Francis with his requested remedy, and thus affirm.

## I.

In September 2008, Francis was sentenced in the District of Vermont to fifty-one months in prison and two years of supervised release for making false statements in connection with the purchase of a firearm.    18 U.S.C. § 922(a)(6).    Shortly thereafter, he was sentenced in the District of Massachusetts as a felon in possession of a firearm and ammunition.    18 U.S.C. § 922(g)(1).    For this latter crime, the court sentenced him to twenty-seven months in prison and two years of supervised release. The first twenty-one months were to run concurrently with the Vermont sentence, yielding a total incarcerative span of fifty-

seven months. His imprisonment began with detention on July 16, 2008, and his expected release date was April 16, 2013.

While in prison, Francis earned good-time credits. 18 U.S.C. § 3624(b)(1) (allowing for fifty-four days of good-conduct time for each year). His putative release date was therefore moved up to October 10, 2012. With two months remaining, on August 9, 2012, the BOP transferred Francis to a residential re-entry center, the Coolidge House. Unfortunately, Francis violated a number of rules while he was there.

On August 21, 2012, the Coolidge House's "Center Discipline Committee" ("CDC") issued its first violation report regarding Francis's behavior. After a hearing, the CDC recommended that Francis be returned to a secure BOP facility. A Discipline Hearing Officer reviewed the matter, and imposed the recommended punishment.

Before the BOP could effectuate that transfer for this initial infraction, however, the CDC accused Francis of committing five more violations. The CDC swiftly prepared a report about each event, but it was unable to provide Francis with CDC review hearings before the transfer occurred. While Francis was mid-transfer (and thus in the custody of the U.S. Marshals), the CDC attempted to conduct hearings over the telephone, but ultimately had to hold them in absentia. After the proceedings and a

subsequent review by a hearing officer, the BOP revoked 142-days of Francis's total good-time credits as a disciplinary measure. His release date was thus delayed until February 25, 2013.

After Francis returned to a secure BOP facility, a final in-person hearing was scheduled to re-consider the 142-day sanction. On January 7, 2013, the hearing officer expunged several of the violations, and reinstated all but 41 days of the lost good time. With this change, Francis's release date reverted back to November 16, 2012. The BOP therefore immediately released Francis from its custody. At that point, he began serving his term of supervised release.

In late 2013, Francis filed this petition for habeas corpus, invoking 28 U.S.C. § 2241. He sought a court order requiring the BOP to reinstate the lost good-time credits and to amend his prison records accordingly. Moreover, he demanded an immediate end to his supervised release term to account for the extra time incarcerated. Francis constructed his case around the theory that the BOP's failure to hold an in-person hearing before revoking good-time credits violated the due process clause. The defendants swiftly moved to dismiss the petition or, in the alternative, for summary judgment.

The district court bifurcated its consideration of the desired remedies. First, it converted Francis's request to

terminate his supervised release term to a motion to vacate or amend the sentence, see 28 U.S.C. § 2255. The court indicated that it was willing to account for the time Francis over-served when deciding that converted motion. But, because Francis had a forthcoming revocation hearing (to address an unrelated, alleged violation of the conditions of his release), the court postponed ruling on that converted motion. At that later hearing, the court found Francis in violation, terminated the remainder of his sentence, and imposed a new two-year term of supervised release. Other than a very brief statement at oral argument before us, Francis fails to offer even a perfunctory argument respecting this part of the case, and we thus bypass further discussion of it. See Mills v. U.S. Bank, NA, 753 F.3d 47, 55 (1st Cir. 2014).

Meanwhile, Francis also persisted in the district court with a request that his good-time credits be reinstated and that his release date be amended to reflect that change. The district court concluded that while Francis had over-served his sentence, no due process violation occurred. The court therefore entered judgment for the defendants. A timely appeal -- centered on this second request -- followed.

## II.

We review the denial of a habeas petition de novo, Nadeau v. Matesanz, 289 F.3d 13, 15 (1st Cir. 2002), and can affirm

- 5 -

for any reason apparent in the record, cf. Jones v. Secord, 684 F.3d 1, 5 (1st Cir. 2012).

There are two lenses through which we can view Francis's petition. First, we can analyze it as it was literally presented to us: a retroactive challenge to the execution of an incarcerative sentence (that is, a request to change the end date of a previously completed prison term). Alternatively, we could consider it as a protest to the execution of Francis's supervised release term (that is, a request to alter the start date of that feature of the sentence). We address each plausible theory in turn.

### i.

Francis presents this case to us as a retroactive attempt to reinstate his good-time credits and to amend his records. Section 2241, however, erects an insurmountable barrier.[1] That habeas provision establishes a mechanism for a federal inmate who is "in custody" to challenge the execution of (rather than the imposition of) his or her sentence. See 28 U.S.C § 2241(c)(3)("The writ of habeas corpus shall not extend to a prisoner unless . . .

---

[1] In the habeas context, we are particularly cognizant of the basis that the petitioner invokes, since the habeas scheme is not interchangeable with other regimes. See, e.g., González-Fuentes v. Molina, 607 F.3d 864, 872-74 (1st Cir. 2010). For instance, we have consistently emphasized distinctions between habeas and civil rights statutes, and have noted that a litigant must invoke the correct one to proceed. Id.; see also Preiser v. Rodríguez, 411 U.S. 475, 489-90 (1973).

[h]e [or she] is in custody in violation of the Constitution or laws or treaties of the United States."); see also Thompson v. United States, 536 F.2d 459, 460-61 (1st Cir. 1976).

For example, an individual may invoke § 2241 to dispute a parole board's action, to challenge placement (or lack thereof) in a community confinement center, or to contest one's imprisonment in a specific facility. Id.; see also Muniz v. Sabol, 517 F.3d 29, 33-34 (1st Cir. 2008) (collecting cases). This section has also traditionally been available to inmates challenging the revocation of good-time credits. See, e.g., Littlefield v. Caton, 856 F.2d 344 (1st Cir. 1988). We assume, without deciding, that this remains true despite recent dicta in Pepper v. United States. 131 S. Ct. 1229, 1248 n.14 (2011) ("An award of good time credits by the Bureau of Prisons (BOP) does not affect the length of a court-imposed sentence; rather, it is an administrative reward . . . Such credits may be revoked at any time before the date of a prisoner's release."); see also Cardona v. Bledsoe, 681 F.3d 533, 537 n.8 (3d Cir. 2012) ("Indeed, the Supreme Court's recent opinion in [Pepper] calls into question whether an inmate can even bring a habeas claim for an actual loss of good time credits." (emphasis in original)).

Under this theory, the § 2241 petition here cannot move forward for a simple reason: the petition was moot at the moment

it was filed. That is, Francis lost his ability to invoke § 2241 with respect to his prison sentence once he was released from that incarceration. While it is true that an individual serving a supervised release term satisfies the "in custody" requirement (or at least we have said as much for § 2255 purposes), Jackson v. Coalter, 337 F.3d 74, 78-79 (1st Cir. 2003), a petition under § 2241 must still target conditions that will have a contemporaneous or prospective impact on one's sentence, see Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (stating that "[a] prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release," and that "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he [or she] originally asserted. (quoting Incumma v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007))). Here, Francis's requested remedy will have no such effect.

Although we have only dealt with an analogous case in an unpublished opinion, that decision provides an anchoring point for our analysis. See First Cir. Local R. 32.3(a)(2)(explaining when an unpublished opinion has persuasive value). In Simon v. United States, a § 2241 petitioner argued that the government unlawfully withheld 120 days of his good-time credits. No. 95-1330, 1995 WL

- 8 -

709643 (1st Cir. Dec. 4, 1995). By the time Simon's appeal reached us, however, the government had released the petitioner from custody. Accordingly, we concluded that the case was moot because "there [was] no longer any available relief that [could] be judicially awarded." Id. at *1. See also Muniz, 517 F.3d at 34 n.9 (noting that a petitioner's § 2241 challenge was likely moot because it appeared that he had been released).

Our opinion in Simon, in turn, cites two analogous decisions from other circuits. The first, Fendler v. United States Bureau of Prisons, involved an inmate who challenged a parole board's consideration of the severity of his offense and thus denied him an earlier release. 846 F.2d 550, 555 (9th Cir. 1988). The Ninth Circuit dismissed the case as moot, because the individual had been released from custody by the time it heard the case. Id. It determined that there was no continuing controversy since the challenged action only impacted the length of his sentence, which was no longer at issue.

The second case, Bailey v. Southerland, dealt with an individual who, like Francis, challenged the revocation of his good-time credits. 821 F.2d 277, 278 (5th Cir. 1987). Bailey also sought to have his disciplinary record expunged. The Fifth Circuit found that the case had become moot upon his release because he faced no adverse consequences if the status quo remained

- 9 -

unchanged.  Id.  Indeed, the good-time credits (and associated disciplinary record) only affected Bailey's sentence until the point of release and was simply irrelevant after that time.  Id.

Even more recently, the Third and Eighth Circuits have adopted this same approach.  The Third Circuit, in Scott v. Schuykill FCI, held that a former inmate's § 2241 challenge to a disciplinary proceeding was moot because he had been released from custody and thus "his good time credits ceased to have any effect." 298 Fed. App'x 202, 204 (3d Cir. 2008).  Similarly, the Eighth Circuit found an analogous challenge moot because an individual who has been released from prison suffers no adverse or collateral consequences from the revocation of good-time credits.  James v. Outlaw, 142 Fed. App'x 274, 275 (8th Cir. 2005).

The logic underpinning these cases comports with the "in custody" requirement of § 2241 and the mootness doctrine more generally.  See Decker v. Nw. Envt'l. Def. Ctr., 133 S.Ct. 1326, 1335 (2013).  It is only during the course of one's incarceration that one can meaningfully change the conditions of that very confinement.  With respect to good-time credits specifically, the goal is necessarily to reinstate the lost time and thus reduce the length of a sentence being served.  Achieving that goal is no longer possible.

For Francis, a petitioner who did not file this case until after he was released, reinstating his credits or altering his release date remedies nothing. Nor is there any indication that he will suffer any adverse or collateral consequences without retroactive relief. See James, 142 Fed. App'x 274 at 275. Because there is no longer any possible remedy that we can provide, § 2241 simply does not present a viable vehicle for his constitutional claim.

## ii.

Although it may simply represent the flip side of the same coin, Francis's petition could also be interpreted as an attack on the execution of his supervised release sentence. In other words, rather than requesting an amendment to the end date of his custodial sentence, he wants to back-date the start of his supervised release. But for the due process violation, the argument runs, his supervised release would have started in late 2012. He thus seeks an order stating that his release date was the day he should have been released (rather than the date he was physically released from custody), and that his supervised release therefore started at that earlier time.

To the extent that this claim is not mooted as a result of the district court's imposition of a new two-year supervised release term -- a sentence, we reiterate, that the court imposed

- 11 -

after expressing a willingness to account for the 52 days that Francis over-served in prison -- the requested remedy is, in any event, foreclosed by Supreme Court precedent.[2]

In United States v. Johnson, an inmate serving a prison sentence as a result of multiple felony convictions, was successful in having two of his convictions expunged. 529 U.S. 53 (2000). As a result, he had over-served his revised sentence and was subsequently released from custody to begin a term of supervised release. Id. at 55. The Supreme Court addressed the question of whether the extra time served could be credited to the supervised release term; i.e., whether the date when the plaintiff was supposed to have been released could serve as the start of the period of supervised release. Id. at 54. Emphasizing the plain language of the statute governing supervised release, 18 U.S.C. § 3624(e), the Court concluded that the meaning of the phrase "is released from imprisonment" is clear: it signifies the date that the individual is actually released from prison. Johnson, 529 U.S. at 56-59. Thus, the Court concluded that it could not change that date to account for the excess time incarcerated. Id.

---

[2] There is a strong argument that this claim is also now moot since Francis is no longer serving the initial supervised release term. However, Francis could theoretically argue that this second supervised release term also needs to be amended on account of the initial alleged error. For that reason, we consider the claim.

- 12 -

Instead, the petitioner could only seek redress through a petition to modify or terminate the sentence in the district court under 18 U.S.C. § 3583(e).  Id. at 66.

Johnson binds us.  Even taking Francis's complaint as true, and even assuming that the facts it alleged constituted a due process violation, we would still be unable to provide him with the relief that he seeks.[3]  That is, Francis requests an order back-dating his release from confinement.  But, Johnson says that such a remedy contravenes the plain language of the statute and that the date Francis's supervised release began must, as a matter of statutory law, remain the day he was physically released from incarceration.  There are thus no facts Francis could assert, or constitutional claim that he could muster, which would entitle him to the specific remedy he now requests under § 2241.  Cf. Minneci v. Pollard, 132 S.Ct. 617, 612 (2012) (noting in the Bivens context that dismissal is appropriate where no remedy exists even if the facts, taken as true, make out a constitutional violation).

Although Johnson makes plain that Francis may have other avenues to obtain a shorter supervised release term -- such as through a motion to modify or terminate his sentence -- he has not

---

[3]  In any event, we are dubious of Francis's constitutional claim as it appears that the BOP, in this case, provided sufficient process to Francis as required under Wolff v. McDonnell, 418 U.S. 539 (1974).

pursued those avenues below or on appeal.  Nor, it must be noted, do his bare invocations of 28 U.S.C. § 1331 (original question jurisdiction), and 28 U.S.C. § 1343(4)(providing jurisdiction "to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote"), provide an alternative basis for us to act.  See Am. Sci. & Eng'g, Inc. v. Califano, 571 F.2d 58, 63 n.8 (1st Cir. 1978) ("As with § 1331, that jurisdictional provision [28 U.S.C. § 1343] only comes into play where a cause of action exists.")  Accordingly, since Francis has failed to present a petition upon which any relief could be granted, the case cannot move forward.

## III.

In sum, the district court correctly denied Francis's § 2241 habeas petition.  As such, we **AFFIRM.**