TATEL, Circuit Judge,
with whom Senior Circuit Judge GINSBURG joins, concurring:
Although our resolution of this case avoids the need to address Bowman’s Bi *1041 vens claim, because the issue is fully briefed and one of first impression in this circuit, I write separately to explain why, had Bowman alleged that Defendants barred him from preparing taxes, I would have concluded that he was entitled to pursue his claim against Defendants.
In Bivens, the Supreme Court recognized an implied right of action for damages when federal officials violate the Fourth Amendment. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); see Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (recognizing a Bivens remedy for a claim of employment discrimination by a congressman in violation of the Fifth Amendment’s Due Process Clause). Since then, the Supreme Court and this circuit have “tread carefully before recognizing Bivens causes of actions.” Meshal v. Higgenbotham, 804 F.3d 417, 421-22 (D.C. Cir. 2015) (collecting cases). In determining whether to do so, courts take a “case-by-ease approach” rather than asking “categorically! ] whether a Bivens action can lie.” Id. at 422.
This approach involves two steps. First, courts consider whether “ ‘any alternative, existing process for protecting the constitutionally recognized interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.’ ” Minneci v. Pollard, 565 U.S. 118, 132 S.Ct. 617, 621, 181 L.Ed.2d 606 (2012) (alteration omitted) (quoting Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007)). Second, “even in the absence of an alternative, ... federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation.” Id. (quoting Wilkie, 551 U.S. at 550, 127 S.Ct. 2588).
One such special factor — the one at issue here — is the existence of a “comprehensive remedial scheme” representing “an informed congressional judgment ... sufficient to stay the judiciary’s hand.” Davis v. Billington, 681 F.3d 377, 382-83 (D.C. Cir. 2012). Specifically, the Supreme Court has declined to extend Bivens when “the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration.” Schweiker v. Chilicky, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). If a claim falls “within [the] ambit” of a comprehensive remedial scheme, courts defer to Congress’s choice “about which remedies should be available,” even if Congress has chosen to provide no remedy at all. Davis, 681 F.3d at 383.
The district court concluded — and Defendants argue on appeal — that Circular 230 qualifies as a comprehensive remedial scheme that precludes Bowman’s Bivens remedy. As Defendants point out, Circular 230’s disciplinary process includes, “among other procedures, the institution of proceedings (31 C.F.R. § 10.60), service of the complaint (§ 10.63), the filing of an answer (§ 10.64), representation (§ 10.69), conduct of the hearing (§ 10.7[2]), and [the] decision of the Administrative Law Judge (§ 10.76),” followed by “appeal ... to the Secretary of the Treasury” and “federal court review.” Appellee’s Br. 29-30. These procedures allow practitioners to “challenge allegations of misconduct.” Id. at 29.
In support of their argument that this scheme bars Bowman’s Bivens claim, Defendants cite a series of cases in which we rejected Bivens claims in situations where Congress intended to include “a particular claimant — and his underlying claim”— *1042 within the ambit of “a given congressional ‘comprehensive system.’ ” Spagnola v. Mathis, 859 F.2d 223, 229 (D.C. Cir. 1988) (en banc) (per curiam); see Davis, 681 F.3d at 387; cf. id. at 383-84 (examining a comprehensive remedial scheme that covers the claimant). For instance, in Spagnola v. Mathis, we held that because the plaintiffs’ constitutional claims qualified as “prohibited personnel practices” within the meaning of the Civil Service Reform Act (CSRA), and because the actions they challenged were “plainly cognizable”' under the Act, their claims fell within the Act’s ambit. 859 F.2d at 229 & n.11. In Wilson v. Libby, the defendants disclosed information “subject to the Privacy Act’s protections,” but the Act exempted the defendants from its remedies. 535 F.3d 697, 707 (D.C. Cir. 2008). “Th[e] intentional omission of the [defendants] from the comprehensive coverage of the Privacy Act,” we concluded, “require[d] us to deny the additional remedies to the [plaintiffs] which they seek.” Id. at 708. And in Davis v. Billington, we explained that the CSRA precluded a Bivens claim brought by a Library of Congress probationary employee because the Act “deliberately included Library of Congress employees in the ‘civil service’ governed by the CSRA” and “just as deliberately ... limit[ed] the beneficiaries of the CSRA’s remedial protections in large part to non-probationary employees in the executive branch.” 681 F.3d at 384. The CSRA, moreover, provided “procedural protections and rights of appeal for the specific underlying actions [the plaintiff] chal-lengefd].” Id. at 387.
This case is very different. In Loving, we held that Congress, in enacting the statute under which the Secretary of the Treasury promulgated Circular 230, see 31 U.S.C. § 330(a), had no intention of giving the Secretary authority over tax preparers. 742 F.3d at 1022. As we noted, that statute only authorizes the Secretary to “regulate the practice of representatives of persons before the Department of the Treasury.” Id. at 1015 (quoting 31 U.S.C. § 330(a)(1)). Tax preparers, we explained, are not “representatives,” and tax-return preparation is not “practice ... before the Department of the Treasury” within the meaning of the statute. 742 F.3d at 1016-21. Accordingly, the IRS lacked statutory authority to discipline tax preparers, including through Circular 230.
Bowman’s case is thus not at all like Spagnola, Wilson, or Davis. Unlike the plaintiffs claim in Spagnola, Bowman’s claim — that is, the claim amicus offers on his behalf — is not “plainly cognizable” under the remedial scheme. Unlike in Wilson, where Congress “intentionally] omi[tted]” a remedy for the plaintiff, here Congress said nothing at all about a remedy for tax preparers disciplined by IRS officials without due process. And unlike in Davis, where the statute provided “procedural protections and rights of appeal for the specific underlying actions” the plaintiff challenged, here the scheme provides no protections at all from Defendants’ series of blunders. In light of Loving, congressional silence here reveals not only that Congress intended to provide no remedy for the claims of a tax preparer disciplined by IRS officials without due process, but also that it intended to give the IRS no disciplinary authority over the claimant at all. As amicus puts it, Congress “left tax preparers entirely outside the scheme and therefore outside the reach of lawful IRS disciplinary action.” Amicus Br. 27.
Instead, this case is like Stewart v. Evans, 275 F.3d 1126 (D.C. Cir. 2002), in which we permitted a federal employee to pursue a Fourth Amendment Bivens claim against her supervisors because a warrant-less search — the focus of her claim — “falls outside the condemnation (and, we presume, the approbation) of the” CSRA. Id. *1043 at 1130. Likewise here. Given our decision in Loving, tax preparers’ claims of unlawful IRS discipline fall outside the “condemnation” of Circular 230’s remedial scheme.
Defendants cite our decision in Kim v. United States, 632 F.3d 713 (D.C. Cir. 2011), in which we concluded that tax protesters could not bring a Bivens action against IRS officials because the Internal Revenue Code offers taxpayers a set of rights and remedies reflecting its “balance between the desire for taxpayer protection and the need for efficient tax administration.” Adams v. Johnson, 355 F.3d 1179, 1186 (9th Cir. 2004); see Kim, 632 F.3d at 717 (citing Adams); see also True the Vote, Inc. v. IRS, 831 F.3d 551, 556-57 (D.C. Cir. 2016) (precluding a Bivens remedy for organizations seeking tax-exempt status in light of the Internal Revenue Code’s remedy for challenging rulings on tax exemption). Here, by contrast, under Loving the IRS remedial scheme offers tax preparers no rights or remedies at all. Indeed, in the only case Defendants cite where a court held that Circular 230 precluded a Bivens remedy, the plaintiff was a practitioner, and practitioners are subject to Circular 230. Kenny v. United States, 489 Fed.Appx. 628, 631-32 (3d Cir. 2012). As Loving teaches, tax preparers are not practitioners, and Circular 230 has never lawfully governed their relationship with the IRS.
To be sure, tax preparers are subject to other statutory penalties elsewhere in the Internal Revenue Code for certain kinds of misconduct. See Loving, 742 F.3d at 1020 (citing 26 U.S.C. §§ 6694, 6695, 6713) (“Over the years, Congress has enacted a number of targeted provisions specific to tax-return preparers, covering precise conduct ranging from a tax-return preparer’s failing to sign returns to knowingly understating a taxpayer’s liability.”). But Defendants never argue that these provisions preclude Bowman’s Bivens claim. And in any event, scattered statutory penalties for things like failure to sign a tax return, see 26 U.S.C. § 6695(b), hardly amount to a comprehensive scheme evincing congressional intent to preclude Bivens remedies for other, ultra vires IRS actions like the ones at issue here. Cf. Davis, 681 F.3d at 385-86 (finding a remedial scheme preclu-sive after reviewing its “careful categorization of the subsets of civil-service employees eligible for each part of the CSRA’s remedial scheme”).
Resisting this analysis, Defendants argue that Bowman’s claim falls within Circular 230’s remedial scheme because he may obtain “limited practice” rights, that is, he may represent “particular persons or entities before the IRS, where such representation reflects well-accepted agent-principal relationships.” Amicus Br. 30 (citing 31 C.F.R. § 10.7(c)(1)). But tax preparers have no special limited practice rights. They may engage in limited practice only to the same extent as any other individual — for instance, by representing a member of their immediate family or their employer. 31 C.F.R. §§ 10.7(c)(l)(i)-(ii). The limited practice scheme is too thin a reed to support the conclusion that Congress intended to preclude a Bivens remedy in this context.
Finally, Defendants argue that prior to our decision in Loving, when Circular 230 covered tax preparers, the remedial scheme “was available to Bowman” and “he availed himself of it” by filing his petition for reinstatement. Appellee’s Br. 37. In Loving, however, we explained that the IRS’s effort to extend Circular 230 to tax preparers was an “expansive, atextual, and ahistorical reading” of the statute. 742 F.3d at 1022. In other words, the statute never lawfully covered tax preparers. In any event, the question here is not whether Bowman made an ill-fated attempt to avail himself of the remedial scheme, but *1044 rather whether Congress intended that scheme to encompass tax preparers. The answer is no.
To sum up, had Bowman alleged that Defendants disciplined him without authority and barred him from preparing taxes, I would have concluded that Circular 230’s remedial scheme presents no bar to a Bivens claim in the narrow and unique circumstances of this case. In reaching this conclusion, I note that Defendants have identified no other reason why this court should refrain from recognizing a Bivens remedy here. Cf. Wilkie, 551 U.S. at 554-62, 127 S.Ct. 2588 (weighing the “reasons for and against the creation of a new cause of action, the way common law judges have always done”). I also acknowledge that this court is reluctant to recognize new Bivens claims and does so rarely. But rarely does not mean never. This circuit has recognized Bivens claims before, supra at 1042-43, as have other circuits, see e.g., Engel v. Buchan, 710 F.3d 698, 699 (7th Cir. 2013) (recognizing a Bivens claim for Brady violations); Smith v. United States, 561 F.3d 1090, 1102-03 (10th Cir. 2009) (concluding that the Inmate Accident Compensation Act did not preclude a Bivens action “for constitutional harms arising from work-related asbestos exposure”), and we should be prepared to do so again in appropriate circumstances — like those existing here.