NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 19 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DWIGHT C. BRUNOEHLER, | No. 16-56634 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 2:15-cv-00688-DMG-JEM |
| JEREMY R. TARWATER; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted April 10, 2018
Pasadena, California

Before: BEA and MURGUIA, Circuit Judges, and KEELEY,** District Judge.

Dwight Brunoehler appeals the district court's dismissal of his claims under

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

(1971), and the Wiretap Act, 18 U.S.C. § 2520 *et seq*. We have jurisdiction

pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Irene M. Keeley, United States District Judge for the Northern District of West Virginia, sitting by designation.

I.

Dismissal for failure to state a claim is reviewed de novo. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). A party's standing to bring a claim is reviewed de novo. *Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 1377 (2017). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1. *Bivens* Claims

Brunoehler seeks *Bivens* relief for claims that FBI Special Agents Jeremy Tarwater and Charles Koepke (the Agents) intercepted his telephone conversations, obtained search warrants, and arrested him without probable cause,

in violation of the Fourth Amendment.[1] The district court dismissed Brunoehler's

*Bivens* claims for failure to state a claim, concluding that alternative processes

could remedy his alleged harms.

"*Bivens* established that the victims of a constitutional violation by a federal

agent have a right to recover damages against the official in federal court despite

the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14,

18 (1980). However, the Supreme Court has since "adopted a far more cautious

course before finding implied causes of action." *Ziglar v. Abbasi*, 137 S. Ct. 1843,

1855 (2017). Thus, the "first question" we must consider is whether this "case is

different in a meaningful way from previous *Bivens* cases decided by" the Supreme

Court. *Id.* at 1864 (internal quotation marks omitted). If a case is "meaningfully

different" from *Bivens* or its progeny, we then consider "whether there were

alternative remedies available or other sound reasons to think Congress might

---

[1] While Brunoehler at times summarizes his claims in a single sentence, Brunoehler alleges separate claims. Although, as the Dissent asserts, there is some link between the allegedly illegal wiretap and unlawful search and arrest, Brunoehler alleges that the Agents invaded his privacy on two separate occasions. The Dissent states that because Brunoehler failed to allege an illegal wiretap claim, all related claims fail. However, *Bivens* relief turns, in part, on what other forms of relief are available. *See Ziglar*, 137 S. Ct. at 1858. Here, Brunoehler alleges two different violations of his Fourth Amendment rights—the wiretap, and search and arrest—each of which require a separate *Bivens* analysis where the possible relief is different under the separate claims. Brunoehler's failure to allege the wiretap claim does not foreclose the opportunity to allege the unlawful search and arrest claims. We find that Brunoehler alleges sufficient factual matter to state two plausible *Bivens* claims. *See Iqbal,* 556 U.S. at 678.

doubt the efficacy or necessity of a damages remedy in a suit like this one." *Id.* at 1865 (internal quotation marks omitted).

A. *Bivens*: Wiretap

Brunoehler contends that the district court erred when it dismissed his claim for unlawful wiretapping. *Ziglar* provides that a meaningful difference from *Bivens* may be the application of another "legal mandate" to the allegedly unconstitutional conduct. *Id.* at 1860. Here, the Wiretap Act was another "legal mandate under which the [Agents were] operating." *Id.* Given the Supreme Court's observation that "even a modest extension is still an extension" of *Bivens*, we conclude that the application of an extensive statutory scheme like the Wiretap Act constitutes a meaningful difference from *Bivens*, which concerned only the Fourth Amendment. *Id.* at 1864.

Further, under *Ziglar*, an extension of *Bivens* is not available here. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858. "Alternative remedial structures" may take many forms, including statutory remedies. *Id.* Because the Wiretap Act provides for damages when agents improperly obtain wiretaps, Brunoehler had an adequate alternative remedy for his alleged harm. That Brunoehler's claims under the Wiretap Act ultimately failed for lack of standing does not mean he did not have access to alternative remedies, but

4                                                                                    16-56634

rather that he lacked standing to challenge the wiretaps at issue. Thus, in light of the available alternative remedies, we decline to extend *Bivens* in this context, and conclude that the district court did not err when it dismissed Brunoehler's claim for unlawful wiretapping.

B. *Bivens:* Search and Arrest

Brunoehler next contends that the district court erred in dismissing his claims for unlawful search and arrest.

First, Brunoehler sufficiently alleges that the Agents arrested him without probable cause. In *Bivens*, the Supreme Court held that the complaint, "fairly read," sufficiently alleged "that the arrest was made without probable cause" even though it did "not explicitly state that the agents had no probable cause . . . [rather it alleged] that the arrest was 'done unlawfully, unreasonably and contrary to law.'" 403 U.S. at 389 & n.1. Here, Brunoehler unequivocally alleges that the search and arrest lacked probable cause.[2] As the Supreme Court determined in *Bivens* that there was no failure in sufficiency of allegations despite the absence of the words "probable cause," we also conclude there is no such failure here where

---

[2] Additionally, while Brunoehler fails to allege a claim based on the unlawful wiretap, we note that the district court judge dismissed the criminal case against Brunoehler on the government's motion after testimony revealed that the Agents provided false and/or incomplete information in the wiretap application. These facts and Brunoehler's allegations, taken as true, sufficiently allege that the Agents did not have probable cause to search and arrest Brunoehler. *See Iqbal*, 556 U.S. at 678.

Brunoehler more specifically alleges the lack of probable cause. Contrary to the Dissent's assertion, the Supreme Court's jurisprudence is clear that particularity is not the standard for stating a claim. *See Iqbal*, 556 U.S. at 678. Further, the Dissent's argument that Brunoehler failed to challenge the basis for the Grand Jury indictment similarly fails. Brunoehler does allege that the Grand Jury lacked probable cause, pointing to the insufficiency and issues in evidence that the Agents produced and relied upon to obtain the indictment against him.[3] At the motion to dismiss stage, we find that Brunoehler stated sufficient factual matter, taken as true, that it is plausible the Agents arrested him without probable cause. *See Iqbal*, 556 U.S. at 678.

Second, Brunoehler's search and arrest claim does not extend *Bivens*. In *Bivens*, the plaintiff alleged that federal agents searched his home for narcotics and handcuffed him without probable cause. 403 U.S. at 389. Here, Brunoehler alleges that the Agents obtained search warrants and arrested him in his home without probable cause.[4] Instead of drug crimes, Brunoehler was arrested for securities

---

[3] Brunoehler alleges, "[o]ne of the few statements by Mr. Brunoehler which were mentioned in the Indictment was his statement that there was 'monkey business' going on at Biostem. Defendants purposefully and intentionally took that statement completely out of context. Mr. Brunoehler's statement regarding 'monkey business' is not by any objective standard, evidence that he committed any crime."
[4] The Dissent contends that the Agents were operating under a different "legal mandate," the warrant, which makes the case meaningfully different from *Bivens*. This argument is not persuasive. The Agents cannot rely on their own misconduct, which Brunoehler challenges through sufficient allegations, to bar Brunoehler's

violations. But the difference in the underlying criminal charges is not the kind of "meaningful difference" envisioned in *Ziglar*; regardless of the crime alleged, the requirement of probable cause is the same under the Fourth Amendment. *See* 137 S. Ct. at 1859–60.

Moreover, *Ziglar* does not require that there be perfect factual symmetry between a proffered *Bivens* claim and *Bivens* itself. Rather, *Ziglar* explicitly preserved "the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Id.* at 1856. We therefore conclude that Brunoehler's unlawful search and arrest claims are not "meaningfully different" from *Bivens*, which involved the same claims—albeit for different crimes—in virtually the same search-and-seizure context. Thus, Brunoehler's allegation of unlawful search and arrest does not seek an extension of *Bivens*, and the district court erred when it dismissed those claims.

2. Wiretap Act Violation Claims

Brunoehler also asserts claims under the Wiretap Act, namely that the Agents' applications for the initial wiretaps (the Possino Wiretaps) did not meet the "necessity" requirement. He alleges that information obtained from the Possino Wiretaps was used to obtain a later wiretap (the Mazur Wiretap) that

---

*Bivens* claim. *See Groh v. Ramirez*, 540 U.S. 551 (2004) (recognizing, in a *Bivens* cause of action, that an officer who prepares the invalid warrant may not argue that he relied on the judge's assurance that the warrant was valid).

intercepted his communications. The district court concluded that Brunoehler only had standing to challenge the Mazur Wiretap application. Brunoehler argues that he has standing to challenge all of the wiretap applications cited in his second amended complaint, including the Possino Wiretaps.

Standing to challenge a wiretap is limited to those "whose Fourth Amendment rights were violated by the interception." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006). "The touchstone for Fourth Amendment standing analysis is whether the individual asserting her right to challenge the interception had a reasonable expectation of privacy in the place where the wiretap was used." *Id.* at 1116; *see also United States v. King*, 478 F.2d 494, 506 (9th Cir. 1973) ("[A] defendant may move to suppress the fruits of a wire-tap only if his privacy was actually invaded; that is, if he was a participant in an intercepted conversation, or if such conversation occurred on his premises.").

As applied here, Brunoehler cannot extend his standing to challenge the Mazur Wiretap application to include the Possino Wiretap applications. Brunoehler does not allege that the Possino Wiretaps targeted him or intercepted any of his calls. He thus fails to allege how he had a reasonable expectation of privacy in the calls captured with the Possino Wiretaps. *Gonzalez, Inc.*, 412 F.3d at 1116. Therefore, even if the Mazur Wiretap application relied on the proceeds of the

Possino Wiretaps, those proceeds did not implicate Brunoehler's Fourth Amendment rights, or by extension his standing under the Wiretap Act. Because Brunoehler appears to challenge only wiretap applications he has no standing to challenge, he has failed to state a claim. *See Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009). Accordingly, the district court did not err in concluding that Brunoehler lacks standing to challenge the wiretaps at issue in his complaint. [5]

III.

In sum, we reverse the district court's dismissal of Brunoehler's *Bivens* claim to the extent he claims the Agents issued a search warrant and arrested him without probable cause, but affirm its dismissal of his *Bivens* claim to the extent he claims the Agents subjected him to an unlawful wiretap. We also affirm the district court's dismissal of Brunoehler's Wiretap Act claims for lack of standing.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

[5] Notably, Brunoehler's second amended complaint challenges only the necessity of the Possino Wiretaps, not the Mazur Wiretap.



*Brunoehler v. Tarwater*, et al, No. 16-56634
CARLOS T. BEA, Circuit Judge, dissenting in part

I agree with the Majority that Dwight Brunoehler's Wiretap Act claim should be dismissed because he does not have standing to challenge the wiretap he alleges was based on a faulty application. However, I think Brunoehler has entirely failed to state a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 91 S. Ct. 1999 (1971). I therefore respectfully dissent in part.

I.

Dwight C. Brunoehler was indicted on January 29, 2013 for conspiracy to commit securities fraud in connection with a pump-and-dump scheme[1] involving Biostem, the company for which Brunoehler served as Chief Executive Officer (CEO). The case against Brunoehler was eventually dismissed, but not before Brunoehler was indicted by a Grand Jury and subsequently arrested and charged. Brunoehler alleges that he was arrested after the government gathered evidence from unlawfully obtained wiretaps.

---

[1] A "pump and dump" scheme is a scheme whereby a person issues press releases or other public information in order artificially to inflate the price of a stock (the pump). When the investing public purchases the stock, and the stock price is sufficiently high, the co-conspirators then sell their shares in coordination and stop promoting the stock (the dump), causing the value of the stock to crater, but netting the co-conspirators a hefty profit.

1

1.  *The* Possino *Wiretap*

Beginning in May 2010, a cooperating witness notified the FBI of a pump and dump scheme involving a company called Sports Endurance, Inc., or SENZ. The alleged participants in the scheme involving SENZ were individuals Regis Possino, Colin Nix, Tarun Mendiratta, and seven other individuals. In March 2011, the United States applied for wiretaps of Possino's and Nix's cell phones, along with two landline phones located at their businesses. The Government's applications attached a 110 page affidavit in support, signed by FBI Special Agent Jeremy R. Tarwater, one of the two defendants in this case. Judge Dale S. Fisher, District Judge (C.D. Cal.), approved the *Possino* wiretap the same day.

In April and May 2011, the United States applied for three follow-up wiretap applications, all for Possino phones. Two were supported by affidavits by the other individual defendant in this case, FBI Special Agent Charles E. Koepke, and the other was supported by an affidavit signed by Agent Tarwater.

Brunoehler was not mentioned in the *Possino* wiretap applications – not as a target, subject or otherwise. Further, Brunoehler does not allege in the Second Amended Complaint (SAC) – the operative Complaint in this case – that any of his conversations was intercepted by the *Possino* wiretaps.

2

## 2. *The* Mazur *Wiretap*

The *Possino* wiretaps provided the government with evidence of other market manipulation schemes. As a result, the Government on June 27, 2011 filed a new wiretap application naming Sherman Mazur and Ari Kaplan as the lead target subjects, and their cellphones as target phones (the *Mazur* wiretap). That same day, Judge Fischer approved the *Mazur* wiretap application. Brunoehler was not named in the *Mazur* wiretap application, and was not a target suspect.

However, Brunoehler's conversations were intercepted when Mazur's cellphone discussions were tapped regarding a possible pump and dump of Biostem, the company for which Brunoehler served as CEO. Brunoehler was therefore added as a target subject in the first application to extend the Mazur wiretaps. Brunoehler admits that the Government acquired sufficient evidence to justify an indictment against him on the basis of the Mazur wiretaps. SAC ¶ 50. A Grand Jury indicted Brunoehler, and on February 13, 2013 Brunoehler was subsequently arrested.

## 3. *Allegations of misconduct against the Government*

The defendants, including Brunoehler, moved to suppress the wiretaps. 18 U.S.C. § 2518(1)(c) requires that each wiretap application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or

to be too dangerous." This is dubbed the "necessity requirement." *U.S. v. Blackmon*, 273 F.3d 1204, 1206 (9th Cir. 2001). In the March 2011 affidavit in support of the *Possino* wiretap applications, and in the subsequent affidavits which extended the *Possino* wiretap, the Government did not state or mention that Sherman Mazur – who would become a target of the *Mazur* wiretap – had previously cooperated with the FBI. The application also failed to discuss whether working with Mazur again could be an adequate alternative to the *Possino* tap – a potentially crucial fact for the determination of whether the *Possino* wiretap was "necessary."

Judge Stephen V. Wilson, District Judge (C.D. Cal.), held three days of hearings regarding suppression of the *Possino* and *Mazur* wiretaps in February 2014. After the hearings, Judge Wilson ordered further briefing on whether the Government had met the necessity requirement.

After the briefing schedule was set, but prior to the submission of briefs, the Government determined that it would not use the evidence obtained from both the *Possino* and *Mazur* wiretaps. The Government then moved the district court to dismiss the *Mazur* case against all defendants, including Brunoehler. The court granted the motion.[2]

---

[2] The case against Possino and his co-defendants continued, even without the benefit of the wiretaps. Multiple defendants ended up pleading guilty. To be clear, Brunoehler was not a defendant in the *Possino* case, and Brunoehler does not

After the *Mazur* case was dismissed, Brunoehler filed the instant action against Agents Tarwater and Koepke, the FBI's case agents in the *Possino* and *Mazur* investigations, along with the other unnamed agents involved in the two cases.

---

otherwise allege that Biostem as a "pump and dump" vehicle was discussed by any of the speakers intercepted in the *Possino* wiretaps.

II.

*A.*        *Wiretap Act Claims*

The Majority is correct that Brunoehler does not have standing to bring claims under the Federal Wiretap Act, 18 U.S.C. § 2510 et. seq. (the Wiretap Act). The Wiretap Act authorizes an action by a "person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation" of the law. 18 U.S.C. § 2520 (a). An aggrieved person under the Wiretap Act is a "person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). "The Supreme Court has interpreted these provisions [in the Wiretap Act] as limiting standing to challenge wiretaps to persons whose Fourth Amendment Rights were violated by the interception." *United States v. Gonzalez*, 412 F.3d 1102, 1116 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006).

There are two wiretaps at issue in this case: the *Possino* wiretap, on which Brunoehler does *not* allege that he was recorded, and the *Mazur* wiretap, on which Brunoehler alleges (and the Government acknowledges) Brunoehler *was* recorded.

Because Brunoehler has not alleged that he was recorded on the *Possino* wiretap, he failed to allege that the Government actually injured him in connection with that wiretap. Brunoehler therefore may not use the Possino wiretap to establish his standing in this case.

6

By contrast, Brunoehler was recorded on the *Mazur* wiretap, meaning that he is an "aggrieved person" under the Act with respect to that wiretap. 18 U.S.C. § 2510(11). However, Brunoehler does not allege that there was anything wrong with the *Mazur* wiretap application, or that his rights were otherwise violated in connection with the *Mazur* wiretap. He therefore failed to allege he suffered an injury from the *Mazur* wiretap.

Taken together, Brunoehler has failed to show that he was aggrieved in any way by the wiretaps: the *Possino* wiretap did not record him, and Brunoehler has not alleged any claim for relief arising from the *Mazur* wiretap.[3]

---

[3] Even if the Complaint *could* be read to allege that the *Mazur* wiretap was improperly obtained because it was based on information from the *Possino* wiretap, that claim would fail. A defendant may not challenge the fruit of an illegal search if he lacks standing to challenge that search. *See Wong Sun v. United States*, 371 U.S. 471, 492 (1963) (finding that defendant could not seek the exclusion of drugs illegally seized from a co-defendant because the illegal seizure "invaded no right of privacy or person or premises which would entitle [the defendant] to object to its use at trial."). Multiple circuits have extended this logic to wiretap evidence as well. *See, e.g., United States v. Fury*, 554 F.2d 522, 526 (2d Cir. 1977) (finding that defendant "cannot challenge [the first wiretap] indirectly by seeking to suppress evidence from [the subsequent wiretap] on the ground that the [subsequent wiretap] was authorized in part on the basis of information from the [first wiretap]."). *See also United States v. Gibson*, 500 F.2d 854, 855 (4th Cir. 1974) (finding "fruit of the poisonous tree" principle would not permit defendant to challenge a wiretap that did not target him, even though that wiretap lead to information implicating the defendant); *United States v. Scasino*, 513 F.2d 47, 51 (5th Cir. 1975) (finding that "one cannot assert indirectly what he cannot assert directly," meaning the "defendants have no standing to suppress evidence from" a wiretap that did not intercept those defendants' communications.); *United States v. Williams*, 580 F.2d 578, 583 n. 21 (D.C. Cir. 1978) ("…an accused is unable to attack in this indirect fashion those wiretaps that he could not challenge directly.").

*B.* Bivens *Claim*

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 91 S. Ct. 1999 (1971), the Supreme Court considered whether a plaintiff had a private right of action against federal officers for a Fourth Amendment violation. In that case, federal officers entered Bivens's apartment, manacled Bivens in front of his wife and children, threatened to arrest his family, and searched his apartment. Bivens was then interrogated, booked, and subjected to a strip search. Bivens alleged that the arrest and search were effected without a warrant or probable cause. *Id*. at 389. The Court ruled that it would enforce a damages remedy against the federal officers despite the absence of any statutory authorization for such suit. Such extra-statutory constitutional claims against federal officers have subsequently been referred to as "*Bivens* claims."

Since *Bivens* was decided, however, *Bivens* claims have been recognized in only two subsequent Supreme Court cases: a claim against a Congressman by an administrative assistant who claimed she was fired because she was a woman, *Davis v. Passman*, 442 U.S. 228 (1979), and a claim by a prisoner's estate who sued federal jailers for failing to treat the prisoner's asthma. *Carlson v. Green,* 446 U.S. 14 (1980). As the Supreme Court noted last year, "[t]hese three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has

As shown, Brunoehler lacks standing to challenge the *Possino* wiretaps; he cannot claim it yielded tainted fruit to invalidate the *Mazur* wiretap.

8

approved of an implied damages remedy under the Constitution itself." *Ziglar v.*

*Abbasi*, 137 S. Ct. 1843 (2017).[4] The Court also noted in *Ziglar* that *Bivens* was

the product of an "*ancien regime*…[when] the Court assumed it to be a proper

judicial function to provide such remedies as are necessary to make effective a

statute's purpose," and that therefore "it is possible that the analysis in the Court's

three *Bivens* cases might have been different if they were decided today." *Id*. at

---

[4] The Court in *Ziglar* also noted cases in which a *Bivens* remedy was not recognized.

> For example, the Court declined to create an implied damages remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas,* 462 U.S. 367, 390, 103 S. Ct. 2404, 76 L.Ed.2d 648 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace,* 462 U.S. 296, 297, 304–305, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); a substantive due process suit against military officers, *United States v. Stanley,* 483 U.S. 669, 671–672, 683–684, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky,* 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer,* 510 U.S. 471, 473–474, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); an Eighth Amendment suit against a private prison operator, *Malesko, supra,* at 63, 122 S.Ct. 515; a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins,* 551 U.S. 537, 547–548, 562, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007); and an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard,* 565 U.S. 118, 120, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012).

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

9

1857.[5] "As a result," the Supreme Court "urged caution before extending *Bivens* remedies into any new context." *Id*.

There is a four step process to determine whether a *Bivens* claim may be brought.

First, because *Bivens* claims are "implied private action[s] for damages against federal officers alleged to have violated a citizen's constitutional rights," *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009), we must determine as a preliminary matter whether the plaintiff has actually pleaded that his constitutional rights were violated.

Second, assuming there has been a constitutional violation, we determine whether the *Bivens* claim represents a "new context" for *Bivens*, or is instead governed squarely by one of *Bivens*, *Davis*, or *Carlson*. The *Ziglar* Court ruled that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id*.

Third, assuming that the claim is an "extension" of *Bivens*, we decide whether "any alternative, existing process for protecting the interests" exists.

---

[5] The term "*ancien regime*," or "old regime," is a term first used to describe the Bourbon monarchy of France, which was in power from the Late Middle Ages through to the French Revolution of 1789 – a form of government which has never been reimposed in the next 229 years. It has been 38 years since a *Bivens* claim has been recognized by the Court. In the Court's reckoning, 38 years without a successful *Bivens* claim makes such claims "*ancien*."

10

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). If such an alternative exists, the *Bivens* claim will fail.

Finally, we are instructed to consider whether "even in the absence of an alternative…special factors counselling hesitation before authorizing a new kind of federal litigation" exist. *Id.*

### i.     *Brunoehler fails to plead a cognizable injury*

The Majority's first error is its failure to recognize that Brunoehler's complaint does not allege any cognizable constitutional injury. This error arises from the Majority's mistaken finding that Brunoehler alleged two unrelated *Bivens* claims: one claim based on a faulty wiretap, and the other based on his arrest.

In reality, the alleged "injuries" are inextricably linked: Brunoehler claims 1) he was improperly surveilled, and 2) as a result of that improper surveillance, he was arrested. As Brunoehler himself summarizes his claims: "But for the omission that there were other less-intrusive, normal investigative procedures open to them, the wiretap orders would not have been issued and Mr. Brunoehler would not have been indicted and arrested, or suffered damages as a consequence." SAC ¶ 50**.** *See also id.*, ¶ 52: "This claim for relief is brought pursuant to *Bivens* for violations of Mr. Brunoehler's rights … because the Named Agents, Unknown Agents and Supervisory personnel Agents monitored and intercepted and monitored [sic] Mr. Brunoehler's telephone conversations, applied for, obtained and executed search

11

warrants for documents concerning Mr. Brunoehler [and] caused Mr. Brunoehler to be indicted and arrested without probable cause."

Brunoehler's injury, then, flowed from the allegedly illegal wiretaps. However, as the Majority itself recognizes, Brunoehler has not stated a claim that he suffered any injures from those allegedly illegal wiretaps wiretaps: he does not have standing to challenge the *Possino* wiretap because he was not recorded on it, and he has not alleged that there was any deficiency in the *Mazur* wiretap to make it illegal. There can be no *Bivens* claim if there is no cognizable constitutional harm to be remedied. Here, Brunoehler pleaded none.

The Majority appears to credit Brunoehler's statement that he was "arrested without probable cause." The Majority therefore determines that Brunoehler has a separate basis for claiming a Fourth Amendment harm – his arrest "without probable cause," entirely apart from the allegedly problematic wiretap. However, there is a fatal flaw to the Majority's ruling: Brunoehler does not sufficiently plead that he was arrested "without probable cause."

Brunoehler's SAC contains no particularized allegations of official wrongdoing apart from allegations related to the wiretaps. While Brunoehler repeats throughout the SAC the allegation that he was arrested "without probable cause," it appears that what he means by that phrase is that he was arrested on the basis of information which was improperly obtained in the wiretaps. Brunoehler

12

does not allege the Grand Jury which indicted him prior to his arrest did so without probable cause to believe that he had committed the crime for which he was charged. More importantly, he does not explain how, despite the Grand Jury indictment, the federal officers lacked "probable cause" to arrest him. Indeed, such a claim would be quite difficult to make, as "[a] warrant of arrest can be based upon an indictment because the Grand Jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged." *United States v. Greenberg*, 320 F.2d 467, 471 (9th Cir. 1963). *See also Garmon v. Lumpkin Cty., Ga.,* 878 F.2d 1406, 1409 (11th Cir. 1989) ("When an arrest warrant is based upon an indictment, the Grand Jury's determination that probable cause existed to return the indictment also establishes that probable cause existed for the issuance of an arrest warrant for the person charged."). Brunoehler does not impugn in any detail the evidence used to support the warrant for his arrest, nor explain why that evidence does not suffice to support probable cause for the arrest.[6]

---

[6] The Majority notes that "the district court judge dismissed the criminal case against Brunoehler on the government's motion after testimony revealed that the Agents provided false and/or incomplete information in the wiretap application," and contends that such dismissal supports Brunoehler's claim that the officers lacked probable cause to arrest him. *Slip Op.* at *5. The dismissal of the case is a red herring, and the Majority's statement to the contrary is flatly irreconcilable with its ruling on the Wiretap Act claim itself. The Majority recognizes that there are two wiretaps at issue in this case: 1) the *Possino* tap; and 2) the *Mazur* tap. The Majority also acknowledges that 1) Brunoehler has no standing to challenge the

13

In other words, to the extent that Brunoehler alleged that he was "arrested without probable cause," he failed to do so with the required factual particularity. In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made clear that to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Brunoehler has alleged no facts from which we can draw the reasonable inference that his arrest was based on anything other than the probable cause found by the Grand Jury Indictment and generated by the wiretaps – wiretaps which he has no basis to challenge.

Thus, Brunoehler's failure to plead any constitutional injury is fatal to his *Bivens* claim.

ii.    *Brunoehler's arrest is an "extension" of* Bivens

---

*Possino* tap, and 2) Brunoehler failed to allege any defect with the application in support of the *Mazur* tap. *Slip Op.*, Part II.2. The Majority therefore (correctly) rules that Brunoehler's claims under the Wiretap Act should be dismissed. How then is the Government's voluntary dismissal of its criminal case, following the revelation that there was a possible defect with the affidavit in support of the *Possino* wiretap, suddenly relevant to the *Bivens* claim? It is not. The Majority states that the Agents cannot "rely on their own misconduct" to generate probable cause to arrest Brunoehler. *Slip op.* at *7. But again, there is no "misconduct" alleged with respect to the *Mazur* wiretap – the actual wiretap on which Brunoehler was recorded. Brunoehler has no basis to challenge the *Mazur* wiretap to support his Wiretap Act claim. He does not suddenly have a basis to challenge it or the probable cause it generated to support his *Bivens* claim.

14

The Majority's second error is its determination that Brunoehler's arrest does not represent a "new context" for *Bivens* purposes, even if his arrest was somehow "without probable cause" despite the existence of a valid Grand Jury indictment.

The Majority states,

> In *Bivens*, the plaintiff alleged that federal agents searched his home for narcotics and handcuffed him without probable cause. 403 U.S. at 389. Here, Brunoehler alleges that the Agents obtained search warrants and arrested him in his home without probable cause. Instead of drug crimes, Brunoehler was arrested for alleged securities violations. But this is not the kind of "meaningful difference" envisioned in *Ziglar*; regardless of the crime alleged, the requirement of probable cause is the same under the Fourth Amendment.
> Moreover, *Ziglar* did not require perfect factual symmetry between a proffered *Bivens* claim and *Bivens* itself. Rather, *Ziglar* explicitly preserved "the continued force, or even the necessity of *Bivens* in the search-and-seizure context in which it arose." *Id.* at 1856. We therefore conclude that Brunoehler's unlawful search and arrest claims are not "meaningfully different" from *Bivens*, which involved the same claims–albeit for different crimes–in virtually the same search-and-seizure context. Thus, Brunoehler's allegation of unlawful search and arrest does not seek an extension of *Bivens*, and the district court erred when it dismissed those claims.

*Slip Op.* at 7. In *Ziglar,* the Court stated that "[t]he proper test for determining whether a case presents a new *Bivens* claim is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar*, 137 S. Ct. at 1859-60 (Kennedy, J.). The Court then gave a non-exhaustive list of what may be "meaningful" differences:

15

the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or the emergency to be confronted; the statutory or other legal mandate under which the officer was operating…or the presence of other special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859-60.

The Majority concludes that Brunoehler's arrest was not meaningfully different than Bivens's. The Majority is incorrect, because Bivens was subjected to a warrantless arrest, s*ee Bivens,* 403 U.S. at 389-90, and Brunoehler was arrested pursuant to a warrant which followed a Grand Jury indictment. The difference is crucial: the officers whom Brunoehler now sues were operating under a different "legal mandate," *Ziglar*, 137 S. Ct. at 1860, than were the officers in *Bivens*, who executed a *warrantless* search without probable cause. As a result, per *Ziglar*, the difference between our case and *Bivens* is "meaningful." *Id.*[7]

---

[7] Even if we were to find that the evidence used by the Grand Jury to support its indictment was the fruit of a Fourth Amendment violation, that would have no effect on the validity of the Grand Jury indictment or the arrest. As we noted in *United States v. Zielezinski*, 740 F.2d 727, 729 (9th Cir. 1984), "Grand juries can properly indict suspects on the basis of hearsay,...evidence seized in violation of the Fourth Amendment,...or evidence obtained in violation of the Fifth Amendment."  (internal citations omitted). *See also United States v. Calandra*, 414 U.S. 338, 344–45, 94 S. Ct. 613, 618, 38 L. Ed. 2d 561 (1974) ("The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered.")." An arrest based on a warrant which follows a valid Grand Jury indictment does not violate the Fourth Amendment.

### iii. Other remedies are available

Because there was a "meaningful" difference between Bivens' warrantless arrest and Brunoehler's arrest by execution of an arrest warrant issued based on his Grand Jury indictment, a correct *Bivens* analysis would examine and determine whether "any alternative, existing process for protecting the interests" exists. *Wilkie*, 551 U.S. at 550. Such an alternative process does exist: remedies under the Federal Wiretap Act, 18 U.S.C. § 2510 *et. seq.* The Federal Wiretap Act identifies the crimes for which investigating agents may use wiretaps (18 U.S.C. § 2516), describes the procedure for obtaining a wiretap (18 U.S.C. § 2518), and, most importantly, provides a civil damages remedy for violating its provisions, 18 U.S.C. § 2520, totally separate from *Bivens*.

> The civil damages remedy provides a successful claimant with
>
> > (1) such preliminary and other equitable or declaratory relief as may be appropriate;
> > (2) damages under subsection (c) and punitive damages in appropriate cases; and
> > (3) a reasonable attorney's fee and other litigation costs reasonably incurred. [And]
> 
> (c)…
> > (2)…
> > (A) the sum of the actual damages suffered by the plaintiff…

18 U.S.C. § 2520(b)-(c).

The breadth of the available relief in the Wiretap Act obviates the need for a *Bivens* action, even one based on a supposed arrest "without probable cause." It is

undisputed that each of Brunoehler's allegations is traceable to the allegedly problematic wiretaps. In addition to receiving "actual damages suffered" by a violation of the Act, the Wiretap Act makes available punitive damages, along with attorney's fees and costs. Should Brunoehler prevail in a Wiretap Act claim, then, he might be compensated for each of the *Bivens* claims he alleges, and then some.

Brunoehler argues "the District Court negated, undermined or removed its own premise by dismissing *Brunoehler's alternatives* – thereby demonstrating the *absence* of any alternative." (emphasis in original). In other words, he thinks the Wiretap Act is not an adequate alternative remedy because the district court dismissed his flawed[8] Wiretap Act claim.

This argument is not persuasive. *Ziglar* did not require that a litigant *succeed* in utilizing his available alternatives – what matters to our analysis is that those alternatives are available to be used in the first place. It is undisputed that Brunoehler's allegations stem from the allegedly illegal wiretaps. The Wiretap Act provides precisely the remedy he seeks through *Bivens* for any harm which arises from those wiretaps. Brunoehler should not prevail under *Bivens* as a result of the weak case he has under this available alternative. *Cf. Minneci v. Pollard*, 565 U.S. 118, 130, 132 S. Ct. 617, 625 (2012) (explaining that a *Bivens* alternative need only provide "roughly similar incentives for potential defendants to comply with

---

[8] *See Wiretap Act Claims*, ante, Part II.A.

the Eighth Amendment while also providing roughly similar compensation to victims of violations.")

## III.

The basic premise of a *Bivens* claim is that a plaintiff has suffered an injury to his constitutional rights. Each of Brunoehler's claims flows from wiretaps which he has no right to challenge, and from which he suffered no constitutional injury. The *Bivens* claim therefore fails.

Even if we read Brunoehler's complaint to state a claim for an illegal arrest, the *Bivens* claim still would not lie, for the simple reason that such arrest was made upon a warrant supported by probable cause based on the Grand Jury's indictment. Further, where an adequate alternative remedy is available, the court may not extend a *Bivens* claim into a new context. The Wiretap Act provides such an adequate alternative.

The district court's dismissal of Brunoehler's *Bivens* claim should be affirmed in full. I therefore respectfully dissent in part.