RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RICCY MABEL ENRIQUEZ-PERDOMO,

　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

RICARDO A. NEWMAN, U.S. Immigration and Customs
Agent, et al.,

　　　　　　　　　　*Defendants-Appellees*.

⎱
⎰ No. 24-5714

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:18-cv-00549—Charles R. Simpson III, District Judge.

Argued:  May 1, 2025

Decided and Filed:  August 20, 2025

Before:  MOORE, GIBBONS, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Benjamin T.D. Pugh, PUGH AND ROACH ATTORNEYS AT LAW, PLLC, Covington, Kentucky, for Appellant.  Timothy D. Thompson, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellees.  **ON BRIEF:**  Benjamin T.D. Pugh, Christopher D. Roach, PUGH AND ROACH ATTORNEYS AT LAW, PLLC, Covington, Kentucky, Michael J. O'Hara, O'HARA, TAYLOR, SLOAN, CASSIDY, BECK PLLC, Crestview Hills, Kentucky, for Appellant.  Timothy D. Thompson, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellees.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiff Riccy Enriquez-Perdomo entered the United States illegally as a child.  She was initially ordered to be deported, but later benefited from Deferred Action for Childhood Arrivals ("DACA"), which makes her order of removal non-enforceable.  Prior to the immediate events, which gave rise to this lawsuit, Enriquez-Perdomo was a well-known visitor at a United States Immigration and Customs Enforcement ("ICE") facility in Louisville, Kentucky where she frequently went to post bond for those held in custody.  One day when Enriquez-Perdomo visited the ICE office in Louisville, she was suddenly detained by several ICE agents without a warrant or probable cause, despite her DACA status.  Enriquez-Perdomo was then repeatedly moved to different locations across the country until she was finally released eight days later.  After her release, Enriquez-Perdomo sued the ICE agents who detained her, alleging violations of the First, Fourth, and Fifth Amendments, relying on the Supreme Court case of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* to establish an implied federal cause of action.  403 U.S. 388 (1971).  After a previous appeal, her First Amendment claims were dismissed.  Upon remand, the district court then granted summary judgment to defendants, reasoning that all Enriquez-Perdomo's Fourth and Fifth Amendment claims were invalid extensions of *Bivens*.  Enriquez-Perdomo appealed.  We now affirm the decision of the district court.

I.

On March 31, 2004, Enriquez-Perdomo illegally entered the United States of America as a minor.  A removal hearing for Enriquez-Perdomo was scheduled but she failed to appear.  At that hearing, an Immigration Law Judge found Enriquez-Perdomo deportable and entered an order of deportation.  Pursuant to that order, Enriquez-Perdomo was to report to a United States Immigration Officer in Harlingen, Texas on October 18, 2004, where she would be deported to Honduras.  Enriquez-Perdomo did not report to the officer as required.

Years later, Enriquez-Perdomo benefited from DACA. Under DACA, certain unauthorized aliens who entered the United States as children illegally could "apply for a two-year forbearance of removal." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 9 (2020). According to Enriquez-Perdomo's complaint, which defendants accept as true for the purposes of the summary judgment decision underlying this appeal, her DACA status was current at all times relevant to this appeal.

While on DACA status, Enriquez-Perdomo frequently visited an ICE office in Louisville, Kentucky. There, she provided bond money to incarcerated suspects to secure their release pending a hearing. In fact, she visited that office so frequently that she was apparently on a first name basis with many of the ICE agents and staff and on occasion she helped them as an interpreter. However, on August 17, 2017, defendants detained Enriquez-Perdomo under her Order of Removal from 2004 despite allegedly being aware of her DACA status. From August 17 to August 24, while Enriquez-Perdomo was detained by ICE, she was repeatedly moved to different locations: "Louisville, [Kentucky] for three hours; Boone County, Kentucky for four to five days; somewhere in Indiana for one night; Pulaski County, Kentucky or Indiana, until 1 a.m. [From there] she was [taken] to see a judge in Chicago; Chicago, Illinois for seven hours (she never saw a judge); [to] McHenry County, near Chicago, for one night; another place in Chicago for 30 minutes; someplace in Indiana, where she was switched to another car; [and] then immediately taken to Boone County, Kentucky where she was released." DE 1, Compl., Page ID 5. While detained, Enriquez-Perdomo petitioned for habeas relief, but her petition was denied as moot because she was released before the judge could rule on her request. *See Enriquez-Perdomo v. Sessions*, No. 17-147-DLB-CJS, 2018 WL 934854, at *2 (E.D. Ky. Feb. 16, 2018).

After her ordeal, Enriquez-Perdomo brought several *Bivens* claims against defendants alleging five constitutional violations: Count I, unconstitutional arrest and imprisonment in violation of the Fourth Amendment; Count II, unconstitutional unlawful pretrial detention in violation of the Fourth Amendment; Count III, unconstitutional retaliation in violation of the First Amendment; Count IV, unconstitutional denial of due process in violation of the Fifth Amendment; Count V, unconstitutional denial of equal protection in violation of the Fifth Amendment.

After some limited discovery, the district court dismissed Enriquez-Perdomo's complaint. In a memorandum opinion, the court reasoned that it lacked subject matter jurisdiction. *Enriquez-Perdomo v. Newman*, No. 3:18-CV-549-CRS, 2020 WL 6704578, at *5 (W.D. Ky. Nov. 13, 2020). The dismissal was based on 8 U.S.C. § 1252(g), which prevented the court from hearing a cause or claim by an alien arising from the execution of a valid order of removal. *Id.* at *2–4. On appeal, this court in a different panel reversed, holding that a removal order "rendered unenforceable by a grant of DACA" created a non-executable removal order and was thus outside the scope of § 1252(g)'s jurisdiction stripping provision. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867 (6th Cir. 2022). Of note, this decision also held that *Egbert v. Boule* explicitly foreclosed any *Bivens* claims for First Amendment retaliation wholesale. *Id.* at 869 (citing *Egbert v. Boule*, 596 U.S. 482, 498 (2022)). But with respect to the Fourth and Fifth Amendment claims, the prior panel was unsure of the viability of the *Bivens* claims and, therefore, remanded that issue to the district court to decide in the first instance. *See id.* at 869–70.

Upon remand, defendants moved for summary judgment on the complaint's four remaining counts. Defendants argued that Enriquez-Perdomo's four counts arose in new *Bivens* contexts and thus could not proceed. In the alternative, defendants argued that they were protected by qualified immunity. The district court granted summary judgment to defendants, reasoning that Enriquez-Perdomo's claims presented new *Bivens* contexts, and that Congress was better suited to provide a remedy. *Enriquez-Perdomo v. Newman*, 740 F. Supp. 3d 560, 571, 573 (W.D. Ky. 2024). The district court did not address defendants' qualified immunity argument. Enriquez-Perdomo filed this timely notice of appeal.

## II.

In 1971 the Supreme Court in *Bivens* addressed the previously reserved question, *see Bell v. Hood*, 327 U.S. 678, 684 (1946), of whether a violation of the Fourth Amendment includes an implied private right of action to recover monetary damages *even if* no Congressional law allows a plaintiff to do so. *Bivens*, 403 U.S. at 389. In *Bivens*, agents of the Federal Bureau of Narcotics entered the plaintiff's apartment without a warrant or probable cause and arrested him for an alleged narcotics violation. *Id.* The plaintiff was handcuffed in front of his wife and

children and the agents threatened to arrest his entire family while they searched the entire apartment. *Id.* The district court and court of appeals dismissed the plaintiff's complaint for failure to state a claim because Congress had not created a federal cause of action to sue for monetary damages against federal agents under the Constitution. *Id.* at 389–90. But the Supreme Court reversed, holding that despite the lack of a legislatively created cause of action, the plaintiff in *Bivens* could recover for the Fourth Amendment violation. *Id.* at 397–98; *see also Butz v. Economou*, 438 U.S. 478, 486 (1978) ("*Bivens* established that compensable injury to a constitutionally protected interest could be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts[.]").

Eight years after *Bivens*, the Supreme Court recognized another implied private right of action under the Constitution—this time under the Fifth Amendment—in *Davis v. Passman*. 442 U.S. 228 (1979). In *Davis*, the plaintiff worked as a deputy administrative assistant for a United States Congressman, the defendant. *Id.* at 230. Plaintiff was then fired from her role for the explicit reason that she was a woman, and the defendant preferred to hire a man instead. *Id.* The plaintiff sued under the Fifth Amendment for sex discrimination. *Id.* at 231. The defendant sought to dismiss her complaint because there was no private right of action under the Fifth Amendment. But the Supreme Court extended its prior *Bivens* precedent and held that the plaintiff did have a private right of action for her claims under the Fifth Amendment. *Id.* at 234. The final extension of *Bivens* came a year after *Davis* in *Carlson v. Green*, although that case concerned the Eighth Amendment, and its facts are not relevant here. 446 U.S. 14 (1980).

Since those three cases, "the Court has not implied additional causes of action under the Constitution" and is "[n]ow long past the heady days in which this Court assumed common-law powers to create causes of action[.]" *Egbert*, 596 U.S. at 491 (citation omitted). Rather, the Supreme Court has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 100 (2020)). Thus, time and time again, when presented with a new constitutional violation without a private right of action, the Supreme Court has rejected extending *Bivens*. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (no *Bivens* claim for federal government employees whose First Amendment rights were violated by their

superiors); *Chappell v. Wallace*, 462 U.S. 296, 297–98 (1983) (no *Bivens* claims for soldiers whose constitutional rights were violated by superior officers); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (no *Bivens* claims for Fifth Amendment due process violations arising from the denial of Social Security benefits); *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 473, 486 (1994) (no *Bivens* claims against federal agencies for violating the Constitution); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (no *Bivens* claim against a private corporation running a prison); *Wilkie v. Robbins*, 551 U.S. 537, 541 (2007) (no Fifth Amendment *Bivens* claim against Bureau of Land Management officials for retaliating against plaintiff for exercising his property rights); *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (no Eighth Amendment *Bivens* claims against employees of a private prison); *Ziglar v. Abbasi*, 582 U.S. 120, 129, 140 (2017) (no *Bivens* claim for Fourth and Fifth Amendment violations arising from the widespread detention of certain illegal aliens after 9/11); *Hernandez*, 589 U.S. at 96–97 (no *Bivens* claim for a Fourth Amendment excessive force violation when a Border Patrol agent shot a Mexican national across the border); *Egbert*, 596 U.S. at 486, 493 (no *Bivens* claim for Fourth Amendment excessive-force or First Amendment retaliation  by a Border Patrol agent); *Goldey v. Fields*, 606 U.S. 942, 944–45 (2025) (per curiam) (no Eighth Amendment excessive-force claim against prison officials).

From these cases, the Supreme Court has clarified the order of operations and legal standard that govern *Bivens* cases and presented courts of appeals and district courts with a two-step test that they must follow.

*First* "we ask whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (cleaned up).  In deciding whether the context is "new," the Supreme Court has been considerably strict.  Importantly, the mere fact that the claim is for a violation of the Fourth or Fifth Amendment does not make the claim similar enough to *Bivens* or *Davis*—instead it is the *context* of the claim that matters.  *See Hernandez*, 589 U.S. at 103.  In addition, although there is no exhaustive list, the Supreme Court has helpfully noted some specific differences to look for in deciding a new context.  This could include

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 140. These new context signifiers were recently elaborated further where the Court noted that a new category of defendants could also create a new context. *Egbert*, 596 U.S. at 492. But again, the Supreme Court also cautioned that there is no exhaustive list of what constitutes a new context. *Id.* at 493.

*Second*, if the court does find a new context, a "*Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 492 (quoting *Ziglar*, 582 U.S. at 136). The Supreme Court has cautioned that in considering special factors, we must "consider the risk of interfering with the authority of the other branches[.]" *Hernandez*, 589 U.S. at 102. And, of note for this appeal, the Supreme Court has held that a special factor indicating that Congress is better equipped to weighing the costs and benefits of the action is "if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137).

Applying this two-part test, the district court granted summary judgments to defendants, holding that Enriquez-Perdomo's claims under the Fourth and Fifth Amendments arose in a new *Bivens* context and that special factors weighed against extending *Bivens*. *Enriquez-Perdomo*, 740 F. Supp. 3d at 571, 573. This court reviews determinations of summary judgment *de novo*. *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023); *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014).

III.

We now hold that Enriquez-Perdomo's Fourth and Fifth Amendment claims constitute new contexts to which *Bivens* cannot extend.

A.

Enriquez-Perdomo's Fourth Amendment claims are materially different from those in *Bivens*. True, as in the original *Bivens* case, she alleges a warrantless arrest. Other facts in addition to the warrantless arrest, however, make her claim materially different from the original *Bivens* claim. As a result, Enriquez-Perdomo's claims present new *Bivens* contexts. *See Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) ("The context is new if it differs in virtually any way from the *Bivens* trilogy."). And because Enriquez-Perdomo's claims constitute new *Bivens* contexts, we must consider whether special factors counsel hesitation before imposing a *Bivens* remedy. Here, the availability of complaint procedures under the Immigration and Nationality Act ("INA") and habeas corpus for unlawful detentions indicates that there are alternative remedies available to Enriquez-Perdomo, and we are thus barred from extending a *Bivens* remedy to her.

1.

The first question we ask when dealing with a *Bivens* inquiry is whether Enriquez-Perdomo's case presents a meaningfully different context from the original *Bivens* trilogy. *Egbert*, 596 U.S. at 492. While Enriquez-Perdomo was subject to a warrantless arrest, the arrest was carried out outside her home and in the context of immigration enforcement. This combination of factors makes defendants' actions materially distinguishable from the original *Bivens* case.

a.

As an initial matter, Enriquez-Perdomo claimed—and defendants admitted—that she was subject to an unlawful arrest. Yet, the government now in its brief both reiterates its admission and yet continues to deny it all the same. We note that the government conceded all relevant

facts to avoid discovery.**[1]**  Accepting this concession, the district court went straight to its *Bivens* ruling, leaving us and Enriquez-Perdomo in the dark as to—among many things—why defendants decided to arrest and ultimately release her.

Therefore, we assume in our *Bivens* analysis that the ICE agents had no valid reason to detain Enriquez-Perdomo.  This is important, because if this were a search and arrest conducted *with* an enforceable warrant, that would almost certainly create a new *Bivens* context.  *See Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023) (order).  But the presence of a warrant (or a warrant-like instrument) is not actually an issue in this case.  Defendants admitted for the purposes of appeal that they knew Enriquez-Perdomo's DACA status made her deportation order unenforceable.  Even more importantly, this court in a prior opinion has already held that Enriquez-Perdomo's removal order was not "executable."  *See Enriquez-Perdomo*, 54 F.4th at 867 (citation omitted).  Thus, we move closer to a pure *Bivens* case: Enriquez-Perdomo was subjected to arrest without a warrant or a warrant-like instrument.  But this is where the similarities between Enriquez-Perdomo's claims and the original *Bivens* case end.

b.

The first major material difference between Enriquez-Perdomo's claims and the original *Bivens* case is where the seizure took place.  Unlike the situation in *Bivens*, Enriquez-Perdomo was not arrested in her home.  Instead, she was arrested in an ICE office.  The Fourth Amendment's protections are at the height of their power when it comes to the home.  *See Bray v. Planned Parenthood Columbia-Willamette Inc.*, 746 F.3d 229, 236 (6th Cir. 2014); *see also Florida v. Jardines*, 569 U.S. 1, 6 (2013) (describing the home as "first among equals" in the

---

**[1]**For example, in response to Enriquez-Perdomo's request for discovery, defendants claimed "[b]ecause the Court can decide the legal issue before it without discovery and can assume for purposes of Defendants' qualified immunity argument that relevant allegations from the Complaint are true, Plaintiff has failed to carry her burden to show that she needs discovery to respond to Defendants' motion for summary judgment."  DE 82, Resp. to Mot. Requesting Disc., Page ID 731–32.  We take this to be conceding, among other things, that Enriquez-Perdomo's statement in her complaint that "[d]efendants had no factual basis to believe that Plaintiff was not lawfully in the U.S. nor did they have any other factual basis to believe that [she] was subject to lawful arrest" was accurate.  DE 1, Compl., Page ID 4.  Likewise, with respect to defendants' motion for summary judgment on both *Bivens and* qualified immunity, they stated that they were "willing to concede disputed facts[.]"  DE 74, Def. Mot. for Summ. J., Page ID 664.

context of the Fourth Amendment).  Here, Enriquez-Perdomo voluntarily exited her home before arriving at the ICE office.  While we would expect federal officials to follow the Constitution in their office, the expectations of privacy that Enriquez-Perdomo would have in a federal agency would be much less than the expectation of privacy she would have in her own home.  Thus, Enriquez-Perdomo's initial seizure took place in a different legal backdrop with different legal standards that are *materially* different from the original *Bivens* case.  *See Ziglar*, 582 U.S. at 140. For that reason, Enriquez-Perdomo's Fourth Amendment claims present a new context.  *See Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021); *but cf. Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1357–58 (10th Cir. 2024) (giving "little weight" to a distinction based on where the arrest occurred).

c.

Second, the immigration law background of Enriquez-Perdomo's seizure also suggests that her case presents a new context.  While it is true, as Enriquez-Perdomo notes, that in *Jacobs v. Alam* we held that the warrantless search and seizure in question did not constitute a new *Bivens* context, her case is markedly different from *Jacobs*.  915 F.3d 1028, 1038 (6th Cir. 2019). For one, *Jacobs* concerned a search and seizure that took place within the plaintiff's home which, as we noted earlier, constitutes a material difference.  *See id.* at 1033–34.  Furthermore, after *Jacobs* came two important cases that are more directly applicable to Enriquez-Perdomo's claims.

The first of these cases was our decision in *Elhady v. Unidentified CBP Agents*.  18 F.4th 880.  In *Elhady*, the plaintiff, a United States citizen, crossed the border from Canada where he was questioned and detained by border-patrol agents in a freezing cold cell.  *Id.* at 881–82.  The plaintiff sued alleging that his due process rights were violated.  *Id.* at 882.  This court noted that the plaintiff's claim arose from the "new" context of the border and refused to extend *Bivens*. *See id.* at 886–87 ("In short, when it comes to the border, the *Bivens* issue is not difficult—it does not apply.  And district courts would be wise to start and end there.").  We further noted the unique importance of the immigration context in that case, stating that "[e]very other circuit (except the Ninth) faced with an invitation to expand *Bivens* to the border/immigration context has held firm."  *Id.* at 886.  The one case from the Ninth Circuit that had departed from the other

circuits at the time of our *Elhady* decision was *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021), *rev'd by Egbert*, 596 U.S. at 482. But since *Elhady*, the Supreme Court has reversed that Ninth Circuit case.

The Supreme Court's decision in that case—*Egbert v. Boule*—is the second important case that we must consider. In *Egbert*, a border patrol agent suspected that a guest at an inn near the Canadian border had entered the United States illegally. 596 U.S. at 488–89. The border patrol agent followed the guest into the driveway of the inn and the owner of the inn, plaintiff, asked the agent to leave. *Id.* at 489. Instead of leaving, the agent threw the plaintiff against an SUV and then onto the ground. *Id.* The plaintiff brought a Fourth Amendment excessive force claim and a First Amendment unlawful retaliation claim. *Id.* at 490. Focusing particularly on the Fourth Amendment claim, the Supreme Court stated that the plaintiff's "conventional" Fourth Amendment excessive force claim was a new context. *Id.* at 495. In so holding, the Supreme Court instructed us that because the case concerned border security, it created national security implications that "are rarely proper subjects for judicial intervention." *Id.* at 494 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). When it comes to border security the Supreme Court has instructed us generally to refrain from extending implied causes of actions and leave any intervention to the executive or legislative branches. *Id.*

Given the context of immigration, the outcomes of *Elhady* and *Egbert* are unsurprising. As the Supreme Court has noted, "[i]mmigration law can be complex, and it is a legal specialty of its own." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). In particular, the executive branch—especially the Attorney General—plays a unique role in immigration that exceeds the executive's scope of power in the garden-variety federal criminal context. *See Roman v. Ashcroft*, 340 F.3d 314, 324 (6th Cir. 2003). And ultimately, "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Therefore, because Enriquez-Perdomo's seizure took place in the context of immigration it must constitute a new *Bivens* context.

Enriquez-Perdomo responds that her case does not take place in the context of immigration or foreign relations. This is because, according to Enriquez-Perdomo, the

defendants arrested her despite her lawful DACA status, thus eliminating any possibility that they could have been enforcing DACA or immigration law. Enriquez-Perdomo's reasoning, however, is tautological. The *Bivens* inquiry is not a merits inquiry. In other words, the question is not whether the defendants had a valid reason under the immigration law to do what they did—or even if the Constitution was violated. *See Kalu v. Spaulding*, 113 F.4th 311, 331 (3d Cir. 2024) ("Our analysis in *Bivens* cases is not focused on the seriousness or egregiousness of a defendant's conduct—we do not ask whether the defendant's conduct violated an individual's right."). If that were the question, then the plaintiff in our *Elhady* decision would have been granted a *Bivens* remedy because there is, of course, no plausible "national security" reason for placing a detainee in a freezing cold cell. *Elhady*, 18 F.4th at 886. As we noted in *Elhady* and as we reiterate today, "[t]he question is not whether national security requires such conduct." *Id.* (quoting *Hernandez*, 589 U.S. at 108) (alteration in original). Instead, the question we must ask in *Bivens* cases like the one before us is: are ICE officers—tasked as they are with the unique duty of enforcing federal immigration law, *Arizona v. United States*, 567 U.S. 387, 397 (2012)—operating in the context of immigration when they detain an individual at an ICE facility whom they knew had DACA status? And, as a result, must we refrain from "alter[ing] the framework established by the political branches for addressing [such] cases[?]" *Hernandez*, 589 U.S. at 108. The answer to both these questions in Enriquez-Perdomo's case is surely yes.[2] The crux of Enriquez-Perdomo's complaint is that she was arrested and detained, *even though* the ICE officers knew that she had DACA status and, therefore faced no enforceable removal order. In the complaint, she asserts that the officers "actually checked the Agency's database and

---

[2]Indeed, Enriquez-Perdomo herself seems to concede that immigration law is implicated by bringing a Fifth Amendment due process claim. This is because a pretrial detention without a hearing, in the criminal context, is *only* a Fourth Amendment claim and *not* a Fifth Amendment claim. *See Brown v. Knapp*, 75 F.4th 638, 649 n.3 (6th Cir. 2023); *see also DeLade v. Cargan*, 972 F.3d 207, 208 (3d Cir. 2020) (holding that pretrial arrest and detention sounds only in the Fourth Amendment); *Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019) (similar). This follows the Supreme Court's straightforward command that "[e]xclusive reliance on the Fourth Amendment is appropriate in the arrest context." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993); *see also Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017) ("This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment."). Of course, "the Supreme Court has long recognized that the detention and deportation of illegal aliens is a 'civil rather than a criminal procedure.'" *Ramirez v. Webb*, 835 F.2d 1153, 1157–58 (6th Cir. 1987) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952)). Because immigration law is civil, the Fifth Amendment would apply to violations of due process in the immigration context. *See, e.g.*, *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012); *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (per curiam). In contrast, the Fourth Amendment applies regardless of whether the activity is civil or criminal. *Clemons v. Couch*, 3 F.4th 897, 903 n.4 (6th Cir. 2021).

confirmed that Plaintiff had properly registered and been approved for DACA status by the U.S. Citizenship and Immigration Services and that her DACA status was current" but "detained her anyway." DE 1, Compl., Page ID 4. In short, Enriquez-Perdomo's complaint is that the officers placed her in immigration detention without lawful basis under the federal immigration laws. It is impossible to separate that claim from the immigration context.

Before us, defendants also argued that Enriquez-Perdomo's claims present a new context because ICE officers are different federal agents than the federal agents in *Bivens*. While that may be true with respect to the ICE officers here, we do not hold today that every agent representing a different agency is automatically outside *Bivens*'s application. Instead, we hold only that an ICE officer, acting in an immigration context, is a new defendant for purposes of *Bivens*. We recognize that the Fifth Circuit has adopted the position advocated by the defendants here and declined to extend *Bivens* to an ICE officer assisting local law enforcement with an ordinary traffic stop. *Hernandez v. Causey*, 124 F.4th 325, 333 (5th Cir. 2024). However, the Fifth Circuit appears to stand alone in reaching this broad conclusion. Our other sister circuits have addressed the extension of a *Bivens* remedy against ICE officers only *within* immigration contexts. *See Tun-Cos v. Perrotte*, 922 F.3d 514, 523–25 (4th Cir. 2019); *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1206–08 (11th Cir. 2016); *Barry v. Anderson*, No. 22-3098, 2023 WL 8449246, at *3 (3d Cir. Dec. 6, 2023). This is as far as we need to go here.

Furthermore, adopting the position that an officer employed by any agency other than the Department of Treasury is a new defendant for purposes of *Bivens* is in tension with our prior decision in *Jacobs*. There, we did not pause to question the applicability of *Bivens* to local law enforcement officers operating under the United States Marshals Service, which is under the Department of Justice and not the Department of the Treasury. *See* 915 F.3d at 1033.[3]

Thus, to the extent ICE officers are operating in an immigration context like they are in Enriquez-Perdomo's case, their behavior constitutes a new *Bivens* context. But we cabin our decision today to the unique role that ICE officers play in our nation and do not hold that every officer different from those in the original *Bivens* case necessarily creates a new *Bivens* context.

---

[3]In fact, as Detroit police officers deputized as Special Deputy U.S. Marshals, these defendants were a further significant step away from the Department of the Treasury. *Jacobs*, 915 F.3d at 1033.

2.

Having found that Enriquez-Perdomo's Fourth Amendment claims are a new *Bivens* context we then must ask if there are special factors that make the judiciary "arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (cleaned up). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez*, 589 U.S at 102). Enriquez-Perdomo has two alternate remedies—an administrative complaint procedure and habeas—which requires that this court not create a new implied cause of action for her Fourth Amendment claims. *See Ziglar*, 582 U.S. at 145.

a.

First, Enriquez-Perdomo can make use of a complaint procedure under the Immigration and Nationality Act of 1952, which the Supreme Court has already held is a sufficient alternative remedy under *Bivens*. Under that law, the Department of Homeland Security can issue regulations that deal with the "control, direction, and supervision of all [its] employees." 8 U.S.C. § 1103(a)(2)–(3). Pursuant to this provision, DHS has developed its own remedial structure with internal review and systems to lodge complaints. *See Tun-Cos v. Perrotte*, 922 F.3d 514, 526 (4th Cir. 2019) (outlining this structure). This remedy may not be proportional to the alleged constitutional violation, but the question in *Bivens* is not whether the relief compensates the wrong fully and completely, but whether Congress has created or authorized the executive to create *a* remedial relief structure *at all*. *See Egbert*, 596 U.S. at 493; *see also Bush*, 462 U.S. at 388 (stating that courts should not make policy judgments to augment relief already provided by Congress or the Executive).

Moreover, the filing of a complaint under the INA was already directly held to be an adequate alternative remedy for violations of Fourth Amendment rights in *Egbert*. *See Egbert*, 596 U.S. at 497. Enriquez-Perdomo responds that this is inadequate relief. But, again, the Supreme Court has already held that this type of relief is an alternative remedy. And there is no reason to suspect that Enriquez-Perdomo could not file a complaint for the actions of ICE officers even if they were not enforcing immigration law. The actual regulation in question that

creates the complaint process applies to every officer "involved in enforcement activities." 8 C.F.R. § 287.8.  It contains a provision setting out the guidelines for arrest, *id.* § 287.8(c), and allows individuals to file reports with the Inspector General or any other entity, *id.* §§ 287.8; .10. Similar to the plaintiff in *Egbert* who complained of excessive force by a CBP officer, Enriquez-Perdomo also has access to this remedy.  If Enriquez-Perdomo wishes to claim that ICE agents arrested her without a warrant or probable cause, or impermissibly targeted her for her race and did not follow the relevant guidelines, she can make such a complaint.

Enriquez-Perdomo also cites *Loper Bright Enterprises v. Raimondo* for the proposition that DHS cannot investigate its own agents for its own constitutional violations.  603 U.S. 369 (2024) While *Loper Bright* certainly affects our ability to defer to an agency's statutory or regulatory interpretation, *id.* at 412–13, when we find that the INA has created an alternative remedy we are not deferring to the agency's statutory, regulatory, or even constitutional interpretation.  We are merely holding that Congress has set out an alternative remedy by which plaintiff can pursue her complaints.

b.

Enriquez-Perdomo can also make use of habeas.  As the Supreme Court noted explicitly in *Ziglar*, habeas relief can constitute an alternative remedy in analyzing new *Bivens* factors. *Ziglar*, 582 U.S. at 145, 148; *see also Jacobs*, 915 F.3d at 1038 (same).  Enriquez-Perdomo concedes that she had access to habeas relief while in custody.[4]  Indeed, she even made use of habeas relief before her claim was dismissed as moot.  *Enriquez-Perdomo*, 2018 WL 934854, at *2.  Therefore, Enriquez-Perdomo's ability to access habeas relief constituted another alternative Congressional remedial scheme that forecloses extending *Bivens*.  *See Hornof v. United States*, 107 F.4th 46, 66 (1st Cir. 2024) ("Remedies such as writs of habeas corpus are sufficient to foreclose *Bivens* relief and qualify as alternative remedies." (cleaned up)); *Alvarez*, 818 F.3d at 1209 (noting that habeas relief is "the most speedy, direct, and powerful remedy from wrongful detention").

---

[4]Enriquez-Perdomo claims habeas relief does not suffice because it cannot provide damages once one is released from custody.  But that has always been the case with habeas, and the Supreme Court has still, nonetheless, described it as a viable alternative remedy.  *See Ziglar*, 582 U.S. at 145, 148.

B.

We now turn to Enriquez-Perdomo's Fifth Amendment claim that defendants violated her right to equal protection of the law by arresting her "in substantial part" due to her "ethnic origin."[5] DE 1, Compl., Page ID 8–9. We think this claim presents a new *Bivens* context and that special factors indicate that we should not extend a *Bivens* claim to her.

1.

For Enriquez-Perdomo's Fourth Amendment claims, our analysis concerned the original *Bivens* case, which involved the protections of the Fourth Amendment. *See* 403 U.S. at 390–91. Now that we are discussing the Fifth Amendment, however, the comparator case is *Davis*. *See* 442 U.S. at 230. But *Davis* was a case concerning sex discrimination in a federal workplace. *See id.* at 230–31. It is true that both in *Davis* and in this case, the plaintiffs were asserting Fifth Amendment claims, but that is where the similarity ends. The Supreme Court and this court have reiterated that merely asserting a claim under the same constitutional amendment is not enough to create a *Bivens* action. *See Hernandez*, 589 U.S. at 103; *Elhady*, 18 F.4th at 885. Enriquez-Perdomo's Fifth Amendment equal protection claim presents a new context for three reasons. First, it takes place outside of the employment context. Second, it involves a federal officer of a different rank and in a different branch of government.

a.

Equal protection claims arising from law enforcement are significantly different from equal protection claims arising in a federal workplace. Moving from workplace discrimination to law enforcement discrimination is clearly a new context, particularly when the plaintiff also alleges a different form of discrimination. *See Fazaga v. FBI*, 124 F.4th 637, 652 (9th Cir. 2024) (concluding that a claim concerning "FBI agents who conducted a counterterrorism investigation that allegedly discriminated on the basis of religion" presented a new context). For example, the Supreme Court has already rejected racial discrimination claims in the military workplace

---

[5]While there is no equal protection clause under the Fifth Amendment against the federal government, the Fourteenth Amendment equal protection clause applies *through* the Fifth Amendment onto the federal government. *See generally Bolling v. Sharpe*, 347 U.S. 497, 500 (1954).

context as arising in a different context than *Davis. Chappell*, 462 U.S. at 305; *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (noting that identical claims under identical amendments are still not enough in different work scenarios). Enriquez-Perdomo's claim, on the other hand, does not involve the federal workplace.

As another example, we can examine the Eighth Amendment *Bivens* action in *Carlson*. *Carlson* took place in a federal prison. 446 U.S. at 16. Later the Supreme Court refused to extend the same Eighth Amendment claim against employees (who are still subject to the federal constitution's command[6]) who worked in a *private* prison, because that was a different context. *Minneci*, 565 U.S. at 126–27. If the differences between two separate federal workplaces or a private versus public prison were enough to create a new context, we think that Enriquez-Perdomo's claims would clearly do so as well.

b.

Finally, because we are comparing to *Davis* rather than *Bivens*, Enriquez-Perdomo's Fifth Amendment equal protection claim extends to a new class of defendant not originally present in the original *Davis* case. *Cf. Ziglar*, 582 U.S. at 140 (holding that a new context can be created by "the rank of the officers involved"). ICE agents are a materially different type of federal employee then a United States Congressman in almost every conceivable way. United States Congressmen are not law enforcement officers. Further, they are in the legislative branch of government, while ICE agents are in the executive, which implicates another *Bivens* concern: the separation of powers. *See Egbert*, 596 U.S. at 491. Ultimately, "[t]he Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022). It would of course implicate the separation of powers to extend an implied cause of action against the executive branch that the Supreme Court has extended to only the legislative branch.

---

[6]Certain aspects of private prisons, despite their status as private entities, are subject to the protections of the Constitution. *See Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) ("Our court has held that private corporations performing traditional state functions, such as the provision of medical services to prison inmates, act under the color of state law for purposes of § 1983.").

c.

There are no cases in any circuit where courts have held that any equal protection claim, by its nature, would fall within the original *Davis* context. Enriquez-Perdomo does point us to two cases prior to *Ziglar*, *Hernandez*, and *Egbert*, which she claims show that her *Bivens* claim is not a new context. The first case she cites is the 1993 case of *Moore v. United States Department of Agriculture on Behalf of Farmers Home Administration* where the Fifth Circuit briefly noted that plaintiff's claims for race discrimination under the federal constitution were not premature because, per *Davis*, it was at least possible that one could recover against the government on a *Bivens* equal protection claim. 993 F.2d 1222, 1223 (5th Cir. 1993). Not only is this case in tension with more recent *Bivens* analysis by the Supreme Court, it also does not represent an extension of *Bivens*; instead, we read this case as simply holding that a race-based equal protection *Bivens* claim against the government is sufficiently non-frivolous to be heard. Enriquez-Perdomo's other case, *Williams v. Meese*, created a *Bivens* claim for a Fifth Amendment race-based equal protection claim in the federal employment context. 926 F.2d 994, 998 (10th Cir. 1991). That decision is also undermined by the recent development of *Bivens* jurisprudence. Nevertheless, the cited case is inapposite to Enriquez-Perdomo's in that it recognizes a Fifth Amendment equal protection claim for employment discrimination, not for equal protection claims concerning ICE enforcement.

On a separate note, Enriquez-Perdomo also cites *Ashcroft v. Iqbal*, where the Supreme Court described *Davis* as a *Bivens* redress to an equal protection violation. *See* 556 U.S. 662, 675 (2009) (citing *Davis*, 442 U.S. at 228). We see this as merely an accurate description of *Davis*. Putting that aside, the Supreme Court has more recently described that case much more narrowly as "an employment-discrimination claim against a Congressman[.]" *Ziglar*, 582 U.S. at 139. Ultimately, there is no indication in *Iqbal* that Enriquez-Perdomo's claims would not constitute a new *Bivens* context.

2.

For the same reasons articulated with respect to the INA complaint procedure and habeas, we hold that Enriquez-Perdomo has alternative remedies which prevent us from extending a *Bivens* claim to her.

As a small additional point, we also note that here the alternative remedy for habeas encompasses Enriquez-Perdomo's Fifth Amendment equal protection claim along with her Fourth Amendment unlawful detention claims. This may, at first blush, appear to be a mismatch, because habeas is about unlawful detention. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *see also Kitchen v. Whitmer*, 106 F.4th 525, 538 (6th Cir. 2024). But equal protection claims can, themselves, cast doubt on the lawfulness of detention, meaning that they are not necessarily completely foreclosed on habeas review.[7] *See Rose v. Mitchell*, 443 U.S. 545, 561 (1979). It is true that habeas relief is aimed towards release and not damages. But an alternate remedy may offer incomplete relief and yet be deemed adequate under the *Bivens* line of cases. *See Egbert*, 596 U.S. at 493; *Bush*, 462 U.S. at 388.

C.

Finally, with respect to Enriquez-Perdomo's remaining Fifth Amendment claim, unconstitutional violation of due process for "unlawfully arresting [Enriquez-Perdomo] without a hearing," DE 1, Compl., Page ID 8, we hold that Enriquez-Perdomo does not have a valid *Bivens* cause of action. Our decision here is supported by our analysis set forth in Part III.A. of the opinion and further strengthened by the very fact that the original *Bivens* case concerned the Fourth Amendment and *not* the Fifth Amendment. *Bivens*, 403 U.S. at 389. To the extent that Enriquez-Perdomo seeks to compare her case to the Fifth Amendment equal protection claim in *Davis*, we hold that a Fifth Amendment *due process* claim is clearly a materially different context from a Fifth Amendment *equal protection* claim. *See Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023) (holding that a procedural due process claim under the Fifth Amendment is a new context for *Bivens* purposes); *Goldberg v. Ortiz*, No. 22-1954, 2023 WL 8064810, at *1 (3d Cir.

---

[7]Such as, for example, a *Batson* claim. *See, e.g.*, *Upshaw v. Stephenson*, 97 F.4th 365, 375–79 (6th Cir. 2024).

Nov. 21, 2023) (per curiam) (same). And, for the reasons already discussed, we hold that Enriquez-Perdomo had an adequate alternative remedy in the form of the INA complaint procedures and habeas.

* * *

Ultimately, we hold that Enriquez-Perdomo has pled no valid causes of action under *Bivens*. And for that reason, like the district court, we need not address any issues of qualified immunity. The allegations of Enriquez-Perdomo's complaint are chilling. Neither Enriquez-Perdomo nor this court has received any adequate explanation as to why she was detained so long without any process or moved around across the country against her will. Indeed, during oral argument, counsel for Enriquez-Perdomo indicated that, *more than seven years later*, he still has minimal information from ICE about why agents seized Enriquez-Perdomo and does not even know why they decided to release her after eight days of captivity. We can only presume that ICE's decision to release Enriquez-Perdomo came after they realized their error in detaining her. Nonetheless, the Supreme Court is clear that absent congressional creation of a cause of action, we cannot construct a damages remedy for the plaintiff. "When evaluating whether to extend *Bivens*, the most important question 'is "who should decide" whether to provide for a damages remedy, Congress or the courts?' The correct 'answer most often will be Congress.' That is undoubtedly the answer here." *Hernandez*, 589 U.S. at 114 (internal citations omitted).

IV.

For the foregoing reasons, we affirm the district court.